(127 So. 155)

SMITH v. BLINN et al.    (6 Div. 221.)

Supreme Court of Alabama.    Oct. 10, 1929.

Rehearing Denied Jan. 16, 1930.

Further Rehearing Stricken April 3, 1930.

Chas. E. Rice and Lucien D. Gardner, Jr., both of Birmingham, for appellees.

Hugh A. Locke, Woolverton & Haley, and Frederick V. Wells, all of Birmingham, for appellant.

BOULDIN, J. In December, 1925, W. Gregory Smith entered into a contract in writing to purchase from George A. Blinn et al., through their attorney in fact, a body of lands located in Flagler county, Fla., containing 2,289.6 acres, more or less, for an aggregate consideration of $103,032. Of this sum $5,724 was paid in cash.

By the contract, the sellers covenanted to convey the lands "by good and sufficient warranty deed in fee simple," except as to a named mortgage assumed by the purchaser. They were to furnish "complete abstracts of title to said property." The purchaser had 30 days "to examine the title and close the transaction"; time "agreed to be of the essence of the contract." If the sellers were "able to convey * * * a good and marketable title," and the purchaser failed to consummate the purchase within the time, the agreement should terminate, and the cash payment be "retained by the sellers as liquidated damages."

If the sellers were unable to convey "a marketable title," then the cash payment or deposit was to be "returned to the purchaser."

Abstracts of title were furnished. On examination by the Florida attorney of the purchaser, the title was disapproved for certain alleged defects pointed out in a written opinion. Thereupon, within the time named, the purchaser declined to close the deal, and

demanded the return of his money. The present suit is to recover the same.

On the trial, the court gave the affirmative charge for defendants.

The transaction involving Florida lands is admittedly governed by the laws of that state.

The statute law of another state may be proven by the production of a copy of the Code or legislative proceedings purporting on the face of the book to be published by authority of the state. Code, § 7686.

Judicial opinions may be proven by production of reports of decisions recognized in such state. Cubbedge v. Napier, 62 Ala. 518.

As the courts take no judicial notice of the statutory law of another state, nor of the law as expressed and applied in its judicial decisions, neither the trial nor appellate courts of this state consider such decisions as evidence unless introduced on the trial. The court may consult and cite such decisions like those of other states as persuasive authority, but they are not binding as proof of the law of the state as a fact, unless put in evidence. Williams v. State, 151 Ala. 108, 44 So. 57; Varner v. Young, 56 Ala. 260; Southern Express Co. v. Owens, 146 Ala. 412, 41 So. 752, 8 L. R. A. (N. S.) 369, 119 Am. St. Rep. 41, 9 Ann. Cas. 1143.

The law of another state as applied to given facts may be also proven by the testimony of expert witnesses shown to be learned in the law of the subject. They may state their opinion of the law as they find it from exposition and interpretation of statutes or adjudications respecting the common law of the jurisdiction. American states are not uniform in their interpretation of the common law, nor as to when its principles are applicable to our institutions. The law of each state at times becomes a matter of evidence in another state. Eminent lawyers become a favored source of expert evidence as to the state of the law in force at the time. Walker v. Forbes, 31 Ala. 11; Cubbedge v. Napier, 62 Ala. 520; Inge v. Murphy, 10 Ala. 885; 2 Wigmore, § 1271; Bode's Case, 8 Q. B. 250.

The law of a case is to be determined by the court, not the jury. Evidence of the laws of another state is addressed to the court. Although provable as a fact, and may be on conflicting evidence of expert witnesses, still the sounder rule is for the court to ascertain the law applicable to the issues, and give it in his instruction to the jury, if other facts are to be settled by the jury on conflicting evidence.

While the authorities are not in harmony on this point, this court, at an early day, adopted the view that the issue as to the law of another state is for the court. Inge v. Murphy, 10 Ala. 885. While that case did not involve parol evidence of expert witnesses, the principle declared is the same, and we think the sounder rule is to apply that principle to all cases. 5 Wigmore, § 2558; 1 Greenleaf Ev. (16th Ed.) § 486; Hansen v. Grand Trunk Ry., 78 N. H. 518, 102 A. 625; Christiansen v. Graver Tank Works, 223 Ill. 142, 79 N. E. 97, 7 Ann. Cas. 69; Rood v. Horton, 132 Wash. 82, 231 P. 450; Story's Conflict of Laws, § 638.

The construction of a written document, such as an abstract of title to lands, is a well-known function of the court.

It logically follows that, when the court has ascertained the law governing the written documents, and construed them in the light of such law, and this is the whole case, nothing remains to be determined by the jury, and, on request, the affirmative charge is due the party entitled to prevail.

But it further follows that upon appeal the trial court's finding as to the law of the foreign state, and his construction of the instrument in the light of that law, are both subject to review by this court.

In reviewing the finding of fact as to the state of the applicable law in the state of Florida, this court will consider the same evidence introduced in the court below, the statutes of Florida, the decisions of the Florida court, and the conflicting opinion evidence of Florida attorneys; and, on the whole record, determine for itself what is the law of Florida so far as material.

A "marketable title" is a good title, one free from defects which subject it to reasonable doubt or which will lead a prudent man on competent legal advice to reasonably expect litigation thereon. One entitled to such title is not compelled to buy a probable lawsuit. Messer-Johnson Realty Co. v. Security Savings & Loan Co., 208 Ala. 541, 94 So. 734; Boylan v. Wilson, 202 Ala. 26, 79 So. 364; Maupin on Marketable Title, etc., pp. 270, 271.

In Barclay v. Bank of Osceola County, 82 Fla. 72, 89 So. 357, dealing with a case similar to this, the holding of the Supreme Court of Florida is well expressed in the headnote as follows: "A contract for the purchase of land requiring 'an abstract showing a merchantable fee-simple title' in the vendor is not complied with unless the title is shown to be good of record, and may not be satisfied by affidavits tending to prove title by adverse possession."

This case was offered in evidence, and the parties agreed that the trial court take knowledge of decisions of the Florida court. This agreement will be given effect here on appeal as to cases shown to have been called to the attention of the trial court.

It has been held that a vendor, insisting upon a forfeiture of the purchaser's deposit, will be held to a strict performance of his contract to furnish an abstract showing the title contracted to be given. Wright v. Bott,

(Tex. Civ. App.) 163 S. W. 360; Maupin on Marketable Title, p. 27.

We are impressed with the soundness of this rule. In a bill for specific performance by the vendor, or a bill to rescind by the vendee, involving the question whether the vendor in fact had a marketable title, a wider range of inquiry is open to determine whether apparent defects materially affect the certainty of a good title.

When by the terms of the contract an abstract is to be furnished, and a limited time given to approve or disapprove, at the peril of the loss of a substantial advance payment, it is contemplated the abstract shall be submitted to competent legal counsel for examination and report. No duty is on him nor his client to go in search of outside evidence to cure defects apparent on the face of the abstract.

That the abstract has been submitted to an attorney at law is proper matter of evidence, tends to show the title was not rejected arbitrarily and without examination as contemplated by the parties. That the attorney gave an adverse opinion is properly received for like reasons. His written opinion, such as that of Mr. Shields in this case, pointing out the legal defects upon which an adverse decision is based, should be received by the court. It is not evidence of the defects nor of their sufficiency, but evidence of the grounds on which the title was rejected; serves to outline the issues to be examined by the court in passing upon questions of law involved.

Appellee very properly concedes that the propriety of the affirmative charge given for defendant is to be determined on the face of the contract and of the abstract, the documentary evidence of title, stripped of attached affidavits tending to support a possessory title, and that the abstract is to be considered in the light of Florida law as found from the evidence.

Much of the evidence touching the defects or irregularities in the title shown by the abstract consists in the testimony of Bayard B. Shields, who represented the plaintiff in passing upon the abstract, and Herman Ullmer, who represented the sellers. Both are attorneys at law of Jacksonville, Fla., and both qualified as expert lawyers on the subject. They differ widely in their opinions as to the effect of the clouds and defects in the chain of title.

A difference of opinion among good lawyers suggests the chance of litigation when property reaches the value placed upon this property by the parties in their contract.

The sellers deraign title through a Spanish grant, known as Francis P. Sanchez grant, antedating the cession of East Florida to the United States.

The first defect or cloud shown by the abstract consists of two interfering Spanish grants, both lying wholly within the boundary of the Francis P. Sanchez grant. One is known as the Hannah Kingsley grant, the other as the Oliveros donation.

Without going into details, it appears from American State Papers in evidence that the Sanchez grant is the oldest; that it was the first concession, was first surveyed and consummated by royal grant.

We are not passing absolutely upon the superiority of the Sanchez title, but for present purposes it is sufficient that the greater weight of the evidence sustains that view.

It appears, however, that, on recommendation of commissioners, all three of these grants were confirmed by act of Congress in 1827, and were later surveyed with reference to government subdivisions, the Sanchez and Kingsley tracts by the same surveyor in 1848, and the Oliveros tract by another surveyor in 1851.

No record appears of the passing of the title to the Kingsley grant out of the original grantee, but several later conveyances appear from claimants under such grant.

These original-grants and subsequent conveyances in some measure becloud the title involved in the present case.

Similar situations arise where, as in the state of Tennessee, the state retained its public domain, and made grants on selections made by the grantees. Their surveys often overlap. Possession under such grants naturally becomes an important factor. The cautious purchaser would naturally give some thought to that contingency.

The next defect in the record title consists of a break in the chain of title from Francis P. Sanchez. He executed his will in 1828, devising his lands to four children, "Isabella," "Francisco," "Thomas," and "Edward." No conveyance from these devisees appears.

The next conveyance purporting to pass the Sanchez title was dated December 10, 1895. The grantors were Rafael Sanchez and his wife, Dolores; the grantee Don Francisco Aballi. On the following day Aballi and wife conveyed to "Dolores Aballi de Sanchez wife of Rafael E. Sanchez." Both conveyances were recorded December 27, 1895.

Both these deeds contain the recital "the said Rafael Sanchez being the only heir at law of the said F. P. Sanchez." "F. P. Sanchez" is further identified in the deed as the original "Francis P. Sanchez."

Appellee insists this recital is to be taken as prima facie true under the general law of ancient documents, and under a Florida statute of 1925 (Laws Fla. 1925, c. 10111, § 2), which reads: "The recitals in any deed of

conveyance or power of attorney shall be admissible in evidence when offered in evidence by either party to any suit at law or in equity as prima facie proof of the truth of the facts therein recited, provided such deed of conveyance or power of attorney appears regular on its face and is a muniment in the chain of title under which the party offering the deed claims, and has been recorded as provided by law for more than twenty years prior to the institution of the suit in which it is offered; and provided further, that the party offering the deed of conveyance or power of attorney for such purposes shall at least ten days before the trial of the suit in which the said copy is offered in evidence give notice to the opposite side of the intention to offer such copy in evidence and the purpose for which the same will be offered, and deliver with such notice a copy of the deed or power of attorney. The original deed or power of attorney shall be offered unless the party offering the certified copy shall show that the original is not within the custody or control of the party offering the copy."

A power of attorney executed in 1887, eight years before the "Aballi" deed, recites that Edward Sanchez and Rafael and Dolores Sanchez were the only heirs of F. P. Sanchez.

█ If we grant the premises, viz. that "heirs" of "Francis P. Sanchez" mean the same as heirs of his four children, devisees under his will, and that a recital of this sort is to be taken as prima facie true, we think "prima facie" true is not the equivalent to true beyond "reasonable doubt." A purchaser may not be required to accept an abstract showing a mere "prima facie" title. Much may depend on whether the fact taken as prima facie true is in keeping with human observation and experience.

The next link in the chain of title is a conveyance by Rafael E. and Dolores Sanchez to C. A. Dupont, 1907.

This deed excepts from the conveyance parcels of the land theretofore conveyed by Chas. E. Poujoud as attorney in fact for the heirs of F. P. Sanchez, as shown by reference to records of numerous deeds; "also any other lands out of the above tracts which may not have been recorded, or that may have been omitted from these exceptions, which were conveyed by said Poujoud as attorney."

The same exception was carried into the next link in the chain of title, conveyance from Dupont to Crescent Company, February, 1909.

The contract here calls for fee-simple title to the same body of lands, excepting the parcels covered by the same conveyances of record, but without the exception above quoted.

Clearly the intent was to withdraw from the Dupont conveyance any lands theretofore conveyed by Poujoud, whether such conveyances were recorded or unrecorded.

We agree with Mr. Shields this serves on the grantee and those claiming under such chain of title notice of any unrecorded conveyances executed by the attorney in fact. It renders the lands really conveyed to Dupont uncertain and indefinite. It cannot be known whether title to any given portion passes until and unless it is known whether Poujoud conveyed it.

In answer to this, Mr. Ullmer expresses the opinion that, the names of grantees and the description of property in the unrecorded deeds being wholly indefinite, the exception is void, and the title to the whole passed to Dupont. This view does not rest upon any statute or decision in Florida, but on the witness' view of the general law of exceptions in deeds of conveyance to land.

█ We do not concur in such construction. The rule is recognized that, where a grantor excepts from the conveyance portions of the property covered by the general description, the conveyance must be sufficient to identify the land excepted. Otherwise the whole will pass as against the grantor or any one claiming under him who must rely on the exception for a description of his property. The exception here is of lands already held by third parties under deeds of sufficient description.

The holder of such deed can make certain the lands he owns when occasion demands. As against him, Dupont cannot take lands which his own deed discloses do not pass, although he may not know what lands were theretofore conveyed. It merely renders his own grant uncertain, and serves notice to look out for unrecorded conveyances. 18 C. J. p. 348, § 355; Sanford v. Stillwell, 101 Me. 466, 64 A. 843.

Appellee relies upon another Florida statute of 1925 (Laws Fla. 1925, c. 10171), which reads:

"Section 1. After the lapse of twenty years from the record of any deed or the probate of any will purporting to convey lands no person shall assert any claim to said lands as against the claimants under such deed or will, or their successors in title.

"Sec. 2. After the lapse of twenty years all such deeds or wills shall be deemed valid and effectual for conveying the lands therein described, as against all persons who have not asserted by competent record title an adverse claim.

"Sec. 3. Any person whose rights are adversely affected by this act will have six months within which to institute suit."

Without undertaking to define the scope and effect of such statute in advance of a construction by the Supreme Court of Florida, it is sufficient to say the deed in question does not "purport" to convey lands held under deeds from Poujoud, recorded or unrecorded.

Our decision, as may have already been forecasted, is that the cumulative clouds and defects of title as shown on the abstract cast such substantial doubt thereon that plaintiff was within his rights in rejecting the same.

The giving of the affirmative charge for defendants was error.

Reversed and remanded. ·

ANDERSON, C. J., and GARDNER and FOSTER, JJ., concur.

### On Rehearing.

BOULDIN, J. Touching the contention that the finding of the trial court as to what is the law of Florida upon the issues presented is conclusive upon this court, we cannot approve.

The rule that the court, rather than the jury, should determine that issue of fact is adopted because the trial judge, learned in the law, is best fitted to ascertain the law of the case and give it in charge to the jury if other issues of fact are to be submitted to them. The same reason which makes this an issue of fact for the court, under our system, makes it the duty of this court to determine the law of the case in passing upon the rulings of the trial court.

In order that our decision may not be misunderstood, we would say that on another trial, the same issue of fact, the law of Florida, will be a matter of evidence under rules stated in the opinion.

Our statement of the law of Florida is based upon the evidence now in the record, and will not preclude other evidence on any phase of the law of Florida involved in the case. This will include any evidence at variance with the case quoted from in the opinion.

Application overruled.