160 So. 262

## SOUTHERN RY. CO. et al. v. LAMBERT.
### 6 Div. 704.

Supreme Court of Alabama.
March 21, 1935.

Stokely, Scrivner, Dominick & Smith, of Birmingham, for appellants.

John W. Altman and J. L. Drennen, both of Birmingham, for appellee.

BOULDIN, Justice.

Action for personal injuries to a passenger in a motor vehicle caused by collision with a railway flat car at a grade crossing.

The place of the accident was at the crossing of Southern Railway tracks over Twenty-Fourth street in the city of Birmingham. It was at night. A railway freight train with some 44 cars was moving in regular course over the track. It came to a stop, as required by statute, on reaching the crossing of the Southern Railway track and that of the Louisville & Nashville Railroad.

While making the usual observations to see that the Louisville & Nashville track was clear, a flat car of this Southern train was at a standstill over the Twenty-Fourth street crossing. At this moment a fire truck of the city fire department, in regular course of duty, moving north on Twenty-Fourth street, ran into this flat car. The plaintiff, a fireman, was riding in his usual place on the rear of the fire truck, and received personal injury from the collision. The truck was sounding the siren and ringing the bell. The speed, according to plaintiff's evidence, was some 25 miles per hour. The stopping distance, as given by the driver of the truck, was some 10 to 12 feet. There was a street light at the crossing. There were no obstructions to view on the approach up Twenty-Fourth street. There was a slight upgrade. The truck was equipped with proper headlights. The driver testified there was a little smoke or fog. He does not contradict other witnesses to the effect that there were no such conditions of visibility as to prevent seeing an obstruction at the crossing well beyond stopping distance. The driver testifies he did not see the flat car, though looking ahead, because he was looking above the car.

■■ The mutual right of a railway company and the traveling public at grade crossings is a recognized principle. Such use, however, involves the right of the railway company to make necessary stops with cars across the track. In this case, such stop was re-

quired by law when the locomotive reached another railroad grade crossing.

This court, in line with the great weight of authority, has declared the rule that, in the absence of statute, or special conditions of hazard to motorists, there is no duty on the railway company to provide special warning or safeguards to motorists, either in the day or nighttime, to prevent collisions with cars standing on such crossing. The law requires motorcars to be equipped with adequate headlights, and that they be not run at such speed that an obstruction, such as a freight car, cannot be discovered in time to come to a stop. Others are not required to take precautions against one's negligence. Otherwise stated, one may assume that another will take ordinary care.

So it is widely held that the negligence of the driver of the motorcar will be treated as the sole proximate cause of an injury resulting from running into a standing railway car at a crossing, unless something intervenes calling for special precautions on the part of railway employees; some condition of hazard that may lead to a collision, notwithstanding ordinary care on the part of the driver of the motorcar.

A passenger, not chargeable with the negligence of the driver, must, nevertheless, make a case of negligence on the part of defendant as a proximate cause. St. Louis-San Francisco R. Co. v. Guthrie, 216 Ala. 613, 114 So. 215, 56 A. L. R. 1110; Berry v. Dannelly, 226 Ala. 151, 154, 145 So. 663; Gulf, M. & N. R. Co. v. Holifield, 152 Miss. 674, 120 So. 750; Gulf, M. & N. R. Co. v. Kennard, 164 Miss. 380, 145 So. 110; Plummer v. Gulf, M. & N. R. Co. et al. (La. App.) 153 So. 322; Witherly v. Bangor & A. R. Co., 131 Me. 4, 158 A. 362; Richard v. Maine Cent. R. Co., 132 Me. 197, 168 A. 811; Cleveland, C., C. & St. L. Ry. Co. v. Gillespie, 96 Ind. App. 535, 173 N. E. 708; Pennsylvania R. Co. v. Huss, 96 Ind. App. 71, 180 N. E. 919; Butters v. Chicago, M., St. P. & P. R. Co., 214 Iowa, 700, 243 N. W. 597; Crosby et al. v. Great Northern R. Co., 187 Minn. 263, 245 N. W. 31; Rowe v. Northern Pac. R. Co., 52 Idaho, 649, 17 P.(2d) 352; Philadelphia & Reading Railway Co. v. Beadenkopf, 1 W. W. Harr. (31 Del.) 247, 114 A. 62, 15 A. L. R. 894; Nadasky v. Public Service R. Co., 97 N. J. Law, 400, 117 A. 478; Morris v. Atlantic City R. Co., 100 N. J. Law, 328, 126 A. 295; McGlauflin v. Boston & M. R. R., 230 Mass. 431, 119 N. E. 955, L. R. A. 1918E, 790; Orton v. Pennsylvania R. Co. (C. C. A.) 7 F.(2d) 36; Sisson v. Southern Ry. Co., 62 App. D. C. 356, 68 F.(2d) 403; Weston v. Southern R. Co., 194 N. C. 210, 139 S. E. 237; Texas & N. O. R. Co. v. Adams (Tex. Civ. App.) 27 S.W.(2d) 331.

The instant case, however, involves the question of negligence of a flagman or watchmen stationed at the crossing.

Section 5988 of the Birmingham City Code reads: "It shall be the duty of flagmen and watchmen stationed at crossings of streets over railroads, whether there stationed voluntarily or pursuant to law, to remain at all times in full view of persons approaching said crossings, either on foot or in vehicles, and to promptly signal such persons to pass over if they can safely do so, or to stop if a train, locomotive or car is approaching too closely to admit of safe passage."

The flagman stationed at this crossing was using light signals by lantern. When the train moved on the crossing he left his position for giving signals, set his lantern down by the flagman's shanty near and south of the railroad track and east of the street, and gave no signal to the approaching fire truck.

The text of Corpus Juris reads: "After the train has reached the crossing, the duty of the gatekeeper or flagman ends as to that train, and such person is not negligent in then leaving the post of duty, since the train itself is then a 'sufficient warning." 52 C. J. 205 (§ 1795).

This text is sustained by the following authorities: Crosby et al. v. Great Northern R. Co., 187 Minn. 263, 245 N. W. 31; McGlauflin v. Boston & M. R. R., 230 Mass. 431, 119 N. E. 955, L. R. A. 1918E, 790 (cited as authority in our Guthrie Case, supra); Pennsylvania R. Co. v. Huss, 96 Ind. App. 71, 180 N. E. 919; Nadasky v. Public Service R. Co., 97 N. J. Law, 400, 117 A. 478; Huntington v. Bangor & A. R. Co., 105 Me. 363, 74 A. 802; Fuller v. Peoria & Pekin Union Railway Company, 164 Ill. App. 385.

It will be noted the Birmingham ordinance contemplates the flagman shall give both stop and go signals. Manifestly, such signals cannot be given to traffic in both directions when a train is moving or standing on the crossing. The ordinance calls for the stop signal if the "locomotive or car is approaching too closely to admit of safe passage." The ordinance was passed with evident regard to hazards from approaching trains. Maybe, while a flat car is on the crossing, the flagman could give light signals to be seen by motorists going in both directions. To do so, he would have to take a position off the track. His position

should be such as to indicate the zone within which vehicles should come to a stop before reaching the danger zone. A change of position in that regard might easily increase the hazard to those relying upon signals for guidance. On full reflection upon the incidents of such situation, we are impressed that a rule requiring the flagman to remain at his post, and give signals, which, in turn, would invite motorists to depend on signals, would involve greater hazards than the rule which requires motorists to look out for cars on the track, and renders their presence a sufficient warning. We therefore approve the rule declared in the above-cited authorities, which appears to be the generally prevailing rule, and applicable to flat cars as well as others.

Section 5983 of the Code of Birmingham requires railway employees to immediately clear a street crossing on the approach of fire department vehicles sounding warnings of approach. The undisputed evidence affords no basis for a reasonable inference that the trainmen in the instant case had time to clear this crossing after becoming informed, or after they should have known, that this truck was heading for this crossing.

Section 5981 of the city Code forbids the blocking of a street crossing by a train for a continuous period of more than three minutes. This section is to be construed in connection with other statutes fixing a speed limit, and requiring trains to come to a full stop, as safety precautions. It appears this train was required to stop at both Twenty-Fifth and Twenty-Sixth streets because of other railway grade crossings. Whether more than three minutes elapsed while this crossing was blocked, and before this collision, is probably a matter of conjecture or estimate; but treating the case as presenting some evidence of such fact, we think there is an entire want of evidence of negligent delay in moving the train of cars over the crossing. No evidence is presented to the effect that the length of the train was unlawful or out of keeping with the due performance of the public service in which the railroad company was engaged.

Finally, it is argued that the flagman owed a duty to the men on the fire truck after hearing the siren and becoming conscious of probable danger; and he should have been in position and given a signal. Under the rules above discussed, there was no negligence in the flagman leaving his post of duty and setting down his lantern at his shanty while the crossing was occupied by the train.

If a special duty arose because of an emergency, it could only arise upon knowledge of same; not mere knowledge that a fire truck was moving in that direction, but notice that the driver was not, or probably would not, exercise the care and precaution imposed by law. There is some evidence that the flagman did go for his lantern as the truck approached, but too late to give a signal. This does not at all show negligence in failing to act sooner.

Defendants were due the affirmative charge, as requested in writing.

Reversed and remanded.

ANDERSON, C. J., and GARDNER and FOSTER, JJ., concur.