60 So.2d 367

**LOUISVILLE & N. R. CO. v. OUTLAW et al.**

4 Div. 150.

Court of Appeals of Alabama.

Oct. 23, 1951.

Rehearing Denied Nov. 20, 1951.

Jas. A. Mulkey, Geneva, and J. C. Fleming, Elba, for appellant.

J. Hubert Farmer, Dothan, and E. C. Boswell, Geneva, for appellee.

HARWOOD, Judge.

In the court below these two suits were by agreement tried jointly, the pleadings and the evidence being the same in each case. Separate verdicts and judgments were rendered in favor of each plaintiff. This appeal is from these judgments.

For convenience we will hereinafter treat the two cases as a single case, they being identical in every respect as to all propositions and issues.

The plaintiff sought damages resulting from injuries sustained when an automobile in which she was riding as a passenger ran into a flat car of a train while the same was across a highway in the town of Cottondale, in the State of Florida.

The case went to the jury on count six of the complaint which was as follows:

### Count Six

"The plaintiff claims of the defendant the sum of Two Thousand Nine Hundred Fifty Dollars, as damages, for that whereas, on to-wit: the 1st day of May, 1943, the defendant owned and operated a railroad in Jackson County, Florida, in and through the town of Cottondale, Florida, a municipal corporation in the State of Florida; that defendant owns and operates a railroad, and does business by agent in Geneva County, Alabama; that on said date plaintiff operated trains over its said railroad in Jackson County, Florida, with railroad cars, hauling freight and passengers; that on said date said railroad crossed in, said town of Cottondale, Florida, the Dothan, Alabama, and Panama City, Florida, highway, a public highway, and a greatly travelled public thoroughfare; that about the hour of 11 o'clock P. M. of said date, plaintiff, and who is a resident citizen of the State of Alabama, was riding in an automobile driven by one Lark Weiser along said public highway in said town of Cottondale, Florida, in a northerly direction, and toward said crossing of said railroad and said public highway as aforesaid; that on said date and on said occasion, and while the defendant, by and through its agents, servants or employees, who were acting in the line and scope of their employment, was operating one of its said trains over and along said crossing, the said automobile so being driven by the said Lark Weiser came into a collision with said train, or more particularly, a flat car in and on said train, being propelled across said crossing in said town of Cottondale, Florida; that as a result of said collision as aforesaid, plaintiff was seriously and permanently injured; that she received two cuts on her head, with one cut and scar over her left eye; her right knee was painfully wrenched with a permanent injury; her left wrist was sprained; she received cuts on her left leg; she was bruised internally; she was shocked and bruised, made sick and sore; she suffered great physical pain and mental anguish; that it was necessary as a result thereof, to remain in a hospital for a long time, and to receive medical care and treatment during a long period of time.

"Plaintiff alleges that at the time of her said injuries as herein complained of, the following statute laws of the State of Florida were in full force and effect in said State, to-wit:

" '768.05 Liability of railroad company.— A railroad company shall be liable for any damage done to persons, stock or other

property, by the running of the locomotives, or cars, or other machinery of such company, or for damage done by any person in the employ and service of such company, unless the company shall make it appear that their agents have exercised all ordinary and reasonable care and diligence, the presumption in all cases being against the company.'; and

" '768.06 Comparative negligence.—No person shall recover damages from a railroad company for injury to himself or his property, where the same is done by his consent, or is caused by his own negligence. If the plaintiff and the agents of the company are both at fault, the former may recover, but the amount of recovery shall be such a proportion of the entire damages sustained, as the defendant's negligence bears to the combined negligence of both the plaintiff and the defendant.' and

" '320.45 Crossing railway tracks.—No person operating any motor vehicle upon a public road shall cross, or attempt to cross, at a point designated by the state road department as a dangerous crossing, any railroad track intersecting the road at grade other than a crossing at which there is a gate or watchman (except on electric railway tracks in an incorporated city or town) without first bringing said motor vehicle to a full stop at a distance of not less than ten feet nor more than fifty feet from the nearest rail, and that shall then look in both directions along the tracks and listen for the approach of any locomotive, car or train of cars thereon; provided, however, that the requirements of this section shall not extend to railroad tracks located within the limits of incorporated cities or towns; and provided further, that in any civil action for damages against any railroad company for alleged actionable injuries sustained by any person at any railroad crossing in this state by reason of a collision at said crossing with any engine or train of cars, the provisions of SS768.05 and 768.06 relating to liability of railroad companies in actions for negligence shall govern.'; and

" '320.46 Signs at dangerous crossings.— Every railroad company operating or leasing any track intersecting a public road at grade and falling within the purview of

S320.45, shall place and maintain a suitable sign board on each side of the track or tracks on the right side of the highway not less than ten feet from the ground and forty inches by fifty inches, two hundred feet from the crossing, which said board shall be painted with black lettering and white background with the following inscription thereon: "STOP—RAILROAD CROSSING—FLORIDA LAW"; provided, that for use at night said signboard shall be equipped with a suitable mirror reflector of such size, color and description as may be approved by the State road department for use at railroad crossings, so designated that same will reflect the rays of a motor vehicle headlight; and provided further, that where railroad warning signs have already been placed, or shall hereafter be placed, at any railroad crossing by the state road department, said railroad companies shall not be required to erect or maintain additional signs or reflectors at such crossings.'; and

" '320.47 Locomotive whistles.—Every railroad locomotive crossing or attempting to cross over any public highway in this state, which is within the purview of S320.-45, shall be equipped with a suitable whistle in good working order, and said whistle shall be blown in such manner before said locomotive reaches the crossing, that any motor vehicle driver who has complied with S320.45 will likely be warned thereby of the approach of such locomotive or train or cars.'; and

" '351.03 To post sign and ring bell at road crossing.—Every railroad company, whenever its track crosses a highway, shall put up large sign boards at or near said crossing with the following inscription in large letters on both sides of the boards: "Look out for the cars!" In all incorporated cities and towns the said companies shall cause the bell on the engine to be rung before crossing any of the streets of a city or town, and their trains shall not go faster, through any of the travelled streets of a city or town, than at the rate of twelve miles per hour. This requirement for posting signs shall not apply to railroad crossings having signs as required by S320.-46.' " Plaintiff avers that her said injuries

and damages were each and all proximately caused by and are the proximate consequence of the negligence and carelessness of the defendant and the persons in its employ and service in the running or propelling of said train and said flat car over and along said crossing, in this:

"1. That at said time and place said defendant railroad company had obstructed the entire width of said Dothan, Alabama, and Panama City, Florida, highway, the same being the main thoroughfare through said town of Cottondale, Florida, thereby preventing any persons or vehicles from passing along said thoroughfare across said track at said time and place.

"2. Said highway was a greatly travelled public thoroughfare, and many people and vehicles crossed said railroad at said crossing at all hours of the day and of the night, and was well known by the defendant; that said highway was at the time of the collision and is now the main highway leading from Dothan, Alabama, and points north in Alabama, Georgia and other states, to Panama City, Florida; that said highway intersected at said Cottondale, Florida, with U. S. Highway No. 90, one of the main highways in the State of Florida; that the volume of travel over said crossing at said time was such that the defendant should have had at said time lights, flares, flagmen or signalmen, bells ringing, whistles blowing, or some other means of guarding against and preventing collisions between vehicles travelling said highway, and its trains at said crossing; that in recognition of this need of this requirement, the defendant shortly after the collision complained of, erected or caused to be erected at said crossing, barriers on each side of and approaching said crossing on said highway, with lights, as a means toward preventing collisions such as complained of hereinabove, and which barriers can be lowered as trains pass over said crossing, thus blocking and preventing the approach of vehicles on said highway over and across said crossing at such times as trains are passing over said crossing.

"3. Said defendant railroad company then and there did not have or maintain any watchman or signalman at said crossing.

"4. Said railroad company did not then and there have any light or flare on the side of said train or of said flat car facing the direction from which the plaintiff came, and did not ring any bell or blow any whistle to warn persons crossing in vehicles or otherwise.

"5. For that there were buildings on each side of said highway to the south of and immediately adjacent to said railroad, and facing the direction from which the plaintiff came, and which buildings obstructed the view of plaintiff and the view of the said Lark Weiser as to the railroad and the railroad tracks of the defendant on each side of said public highway at said crossing.

"6. That an unloaded flat car in and on said defendant's train was moving slowly across said highway at the time of said collision; that one or more automobiles were on said highway just immediately north of said crossing and facing the direction from which the plaintiff came; that the headlights on said cars were burning and shining directly in the direction from which plaintiff came; that said unloaded flat car was only about three feet highway (sic) from said railroad tracks, and that as a direct consequence thereof, the headlights on said cars facing the direction from which plaintiff came as aforesaid, were shining over said flat car and directly in the face of plaintiff and in the face of the said Lark Weiser, and who was driving the car in which plaintiff was riding as aforesaid; that as a direct consequence thereof, neither the plaintiff nor the said Lark Weiser saw, nor could have seen said flat car until it was too late to avoid the collision as aforesaid.

"7. Neither the plaintiff nor the said Lark Weiser who was driving the automobile in which plaintiff was riding as aforesaid, was familiar with said crossing at Cottondale, Florida, and neither had any knowledge of the schedule of said train with which said automobile collided as aforesaid.

"8. That in the circumstances and conditions as hereinabove enumerated and specified, if the defendant had and maintained any railroad crossing sign as required by the laws of the State of Florida such sign

or signs were not visible to the plaintiff nor to the said Lark Weiser, driver of said automobile in which plaintiff was riding at the time of said collision.

"9. That the car in which plaintiff was riding as aforesaid was traveling at a rate of speed of not more than fifteen miles per hour as it directly approached said crossing at the time of said collision, the said rate of speed being a reasonable rate of speed.

"Plaintiff therefore alleges that her said injuries and damages were each and all the proximate consequence and result of the negligence and carelessness of the defendant and the persons in its employ and service as above described, enumerated and specified and in the running or propelling of said train and said flat car over and along said crossing, under the circumstances and conditions as set forth as aforesaid, and who were acting in the line and scope of their employment at the time; wherefore, plaintiff brings this suit."

A demurrer based on innumerable grounds was filed to this count, which demurrer was overruled by the court.

This action by the court is one of the errors assigned by appellant.

It is to be noted that the plaintiff has specifically stated the quo modo of the negligence.

■ When the pleader attempts to set out the quo modo, the facts so set out must constitute negligence. Birmingham Electric Co. v. Baker, 219 Ala. 324, 122 So. 316; City of Birmingham v. Whitfield, 29 Ala. App. 454, 197 So. 666.

■ The sufficiency of the complaint must therefore be examined in this light, as well as in the light of certain conflict of laws rules which are applicable to this proceeding, namely:

In general, the law of the forum governs all matters of pleading. Restatement, Conflict of Laws, Section 592; Goodrich, Conflict of Laws, Section 77.

No Florida decisions interpretating the statutes pleaded were pleaded, nor later introduced in evidence, although several Florida decisions are cited and relied on in appellant's brief.

The conflict of laws rules established by our decisions as to the presumption of the laws of a sister state, when such laws are not pleaded and proved, depends upon the origin of the sister state.

■ If such sister state is of common origin with Alabama the presumption is indulged that the law of such sister state is the common law, unaffected by statutory changes. Walker's Adm'r v. Walker's Adm'r, 41 Ala. 353; Alabama Great Southern R. Co. v. Carroll, 97 Ala. 126, 11 So. 803, 18 L.R.A. 433; Hubbard v. Sayre, 105 Ala. 440, 17 So. 17; Louisville & N. R. Co. v. Cook, 168 Ala. 592, 53 So. 190; Corinth Bank & Trust Co. v. King, 182 Ala. 403, 62 So. 704; Barksdale v. Strickland & Hazard, 220 Ala. 86, 124 So. 234; Ex parte Allan, 220 Ala. 482, 125 So. 612, dictum; Ex parte Paulk, 225 Ala. 420, 143 So. 585.

■ However, if such sister state did not have a common origin with this and older states, Peet v. Hatcher, 112 Ala. 514, 21 So. 711; Castleman v. Jeffries, 60 Ala. 380; or was not formed from colonies which constituted a part of the same empire and which recognize the common law as the source of their jurisprudence, or is a state which the court judicially knows as a historic fact was acquired by purchase from Spain, or France, such as Florida, Texas, or Louisiana, then it will not be presumed that the law of such sister state is the common law, but the presumption indulged is that the law of such sister state is the same as the law of Alabama, including its statutory law. Kennebrew v. Southern Automatic Electric Shock Machine Co., 106 Ala. 377, 17 So. 545; Peet v. Hatcher, 112 Ala. 514, 21 So. 711; Watford v. Alabama & Florida Lumber Co., 152 Ala. 178, 44 So. 567; C. D. Chapman & Co. v. Cullifer, 23 Ala.App. 31, 120 So. 297; Bank of Cottonwood v. Hood, 227 Ala. 237, 149 So. 676.

As before noted, while certain Florida statutes were pleaded, and actually proven, no decisions interpretating these statutes were introduced into evidence, nor was the Florida law proven in any other manner.

■ Thus, the plaintiff having properly pleaded several Florida statutes which she

alleges created her primary cause of action, we must look to these statutes allegedly creating a substantive right, as well as to our own law which must determine how the right or interest will be enforced.

There being no pleading, nor evidence, tending to show what was the interpretation of these statutes as expressed and applied in the judicial decisions of Florida, the trial court could not, nor can we, consider the Florida decisions as evidence of what is the law in this case. We may however consult and cite such decisions as persuasive authority, as we consult the decisions of all sister states. But such decisions are not binding as proof of the fact of the law of Florida because not put in evidence. Smith v. Blinn, 221 Ala. 24, 127 So. 155; Williams v. State, 151 Ala. 108, 44 So. 57; Southern Express Co. v. Owens, 146 Ala. 412, 41 So. 752, 8 L.R.A.,N.S., 369; Varner v. Young Ex'r, 56 Ala. 260.

As a background for our further consideration of the sufficiency of this complaint we quote the following excerpt from the opinion by Bouldin, J., in Southern Ry. Co. v. Lambert, 230 Ala. 162, 160 So. 262:

"Action for personal injuries to a passenger in a motor vehicle caused by collision with a railway flat car at a grade crossing.

"The place of the accident was at the crossing of Southern Railway tracks over Twenty-Fourth street in the city of Birmingham. It was at night. A railway freight train with some 44 cars was moving in regular course over the track. It came to a stop, as required by statute, on reaching the crossing of the Southern Railway track and that of the Louisville & Nashville Railroad.

"While making the usual observations to see that the Louisville & Nashville track was clear, a flat car of this Southern train was at a standstill over the Twenty-Fourth street crossing. At this moment a fire truck of the city fire department, in regular course of duty, moving north on Twenty-Fourth street, ran into this flat car. The plaintiff, a fireman, was riding in his usual place on the rear of the fire truck, and received personal injury from the collision. The truck was sounding the siren and ringing the bell. The speed, according to plaintiff's evidence, was some 25 miles per hour. The stopping distance, as given by the driver of the truck, was some 10 to 12 feet. There was a street light at the crossing. There were no obstructions to view on the approach up Twenty-Fourth street. There was a slight upgrade. The truck was equipped with proper headlights. The driver testified there was a little smoke or fog. He does not contradict other witnesses to the effect that there were no such conditions of visibility as to prevent seeing an obstruction at the crossing well beyond stopping distance. The driver testifies he did not see the flat car, though looking ahead, because he was looking above the car.

"The mutual right of a railway company and the traveling public at grade crossings is a recognized principle. Such use, however, involves the right of the railway company to make necessary stops with cars across the track. In this case, such stop was required by law when the locomotive reached another railroad grade crossing.

"This court, in line with the great weight of authority, has declared the rule that, in the absence of statute, or special conditions of hazard to motorists, there is no duty on the railway company to provide special warning or safeguards to motorists, either in the day or nighttime, to prevent collisions with cars standing on such crossing. The law requires motorcars to be equipped with adequate headlights, and that they be not run at such speed that an obstruction, such as a freight car, cannot be discovered in time to come to a stop. Others are not required to take precautions against one's negligence. Otherwise stated, one may assume that another will take ordinary care.

"So it is widely held that the negligence of the driver of the motorcar will be treated as the sole proximate cause of an injury resulting from running into a standing railway car at a crossing, unless something intervenes calling for special precautions on the part of railway employees; some condition of hazard that may lead to a collision, notwithstanding ordinary care on the part of the driver of the motorcar.

"A passenger, not chargeable with the negligence of the driver, must, nevertheless,

make a case of· negligence on the part of defendant as a proximate·cause. St. Louis-San Francisco R. Co. v. Guthrie, 216 Ala. 613, 114 So. 215, 56 A.L.R. 1110; Berry v. Dannelly, 226 Ala. 151, 154, 145 So. 667; Gulf, M. & N. R. Co. v. Holifield, 152 Miss. 674, 120 So. 750; Gulf, M. & N. R. Co. v. Kennard, 164 Miss. 380, 145 So. 110; Plummer v. Gulf, M. & N. R. Co. et al., La.App., 153 So. 322; Witherly v. Bangor & A. R. Co., 131 Me. 4, 158 A. 362; Richard v. Maine Cent. R. Co., 132 Me. 197, 168 A. 811; Cleveland, C., C. & St. L. Ry. Co. v. Gillespie, 96 Ind.App. 535, 173 N.E. 708; Pennsylvania R. Co. v. Huss, 96 Ind.App. 71, 180 N.E. 919; Butters v. Chicago, M., St. P. & P. R. Co., 214 Iowa 700, 243 N.W. 597; Crosby et al. v. Great Northern R. Co., 187 Minn. 263, 245 N.W. 31; Rowe v. Northern Pac. R. Co., 52 Idaho 649, 17 P.2d 352; Philadelphia & Reading Railway Co. v. Beadenkopf, 1 W.W.Harr. 247, 31 Del. 247, 114 A. 62, 15 A.L.R. 894; Nadasky v. Public Service R. Co., 97 N.J.L. 400, 117 A. 478; Morris v. Atlantic City R. Co., 100 N.J.L. 328, 126 A. 295; McGlauflin v. Boston & M. R. R., 230 Mass. 431, 119 N.E. 955, L.R.A.1918E, 790; Orton v. Pennsylvania R. Co., 6 Cir., 7 F.2d 36; Sisson v. Southern Ry. Co., 62 App.D.C. 356, 68 F.2d 403; Weston v. Southern R. ·Co., 194 N.C. 210, 139 S.E. 237; Texas & N. O. R. Co. v. Adams, Tex.Civ.App., 27 S.W.2d 331.

"The instant case, however, involves the question of negligence of a flagman or watchmen stationed at the crossing.

\*     \*     \*     \*     \*     ·\*

"The flagman stationed at this crossing was using light signals by lantern. When the train moved on the ·crossing he left his position for giving signals, set his lantern down by the flagman's shanty near and south of the railroad track and east of the street, and gave no signal to the approaching fire truck.

"The text of Corpus Juris reads: 'After the train has reached the crossing, the duty of the gatekeeper or flagman ends as to that train, and such person is not negligent in then leaving the post of duty, since the train itself is then a sufficient warning.' 52 C.J. 205 (Sec. 1795).

"This text is sustained by the following authorities: Crosby et al. v. Great North-ern R. Co., 187 Minn. 263, 245 N.W. 31; McGlauflin v. Boston & M.· R. R., 230 Mass. 431, 119 N.E. 955, L.R.A.1918E, 790 (cited as authority in our Guthrie Case, supra); Pennsylvania R. Co. v. Huss, 96 Ind.App. 71, 180 N.E. 919; Nadasky v. Public Service R. Co., 97 N.J.L. 400, 117 A. 478; Huntington v. Bangor & A. R. Co., 105 Me. 363, 74 A. 802; Fuller v. Peoria & Pekin Union Railway Company, 164 Ill. App. 385.

\*     \*     \*     \*     \*     \*

"Finally, it is argued that the flagman owed a duty to the men on the fire truck after hearing the siren and becoming conscious of probable danger; and he should have been in position and given a signal. Under the rules above discussed, there was no negligence in the flagman leaving his post of duty and setting down his lantern at his shanty while the crossing was occupied by the train.

"If a special duty arose because of an emergency, it could only arise upon knowl-edge of same; not mere knowledge that a fire truck was moving in that direction, but notice that the driver was not, or probably would not, exercise the care and precaution imposed by law. There is some evidence that the flagman did go for his lantern as the truck approached, but too late to give a signal. This does not at all show neg-ligence in failing to act sooner."

We come now to the examination of. the sufficiency of the allegation of defendant's negligent acts as specified in the various paragraphs of the quo modo, supra.

■ Paragraph 1 fails to assert or dis-close any illegal or negligent act on the part of the defendant, or that its actions were in anywise repugnant to any rule of conduct, or to any of the statutes pleaded.

■ Paragraph 2 is largely conclu-sionary in its allegations. None of the Florida statutes pleaded require lights, flares, flagmen, bells ringing, or whistle blowing, *after* the train has entirely oc-cupied the ·crossing,·nor are such precau-tions necessary under such circumstances under the authorities generally. St. Louis-San Francisco Ry. Co. v. Guthrie, 216 Ala.

613, 114 So. 215, 217, 56 A.L.R. 1110, and cases therein cited. As stated in the Guthrie case, immediately, supra: "It would seem to be a reasonable corollary that on any occasion, day or night, when the occupation of the crossing would be visible to a traveller using such care for his own safety as the employees of the railroad have a right to presume he will use, in time to allow the traveller to stop before coming in collision with the cars, the railroad ought not to be held liable." Nor can we see that the volume of traffic on a highway can affect the principle involved since a railroad car across a road should be visible to all travellers, whether they be few or many.

Paragraph 3 asserts a bare fact which in no way charges negligence under the decisional law, or under the Florida statutes.

As to paragraph 4, we have found no decisions requiring a railroad to place warning lights on the side of its cars, it being deemed that the cars themselves, in the absence of a peculiar environment, are sufficient warning. Gage v. Boston & M. R. R., 77 N.H. 289, 90 A. 855, L.R.A.1915, 363. Certainly nothing in the Florida statutes imposes such requirement. Nor can the absence of bell ringing or whistle blowing be deemed negligence, the cars having already occupied the crossing.

Paragraph 5 merely asserts that buildings on each side of the highway obstructed the view of the plaintiff as to the tracks on each side of the crossing. This averment does not charge that a view of the crossing was in any way obstructed. Certainly the railroad could not be charged with negligence because private property owners erected buildings on their own lots, facing the highway. Nor do we see how these buildings could have interfered with a traveller's view of the crossing on the open highway ahead. Certainly the facts averred in this paragraph fall far short of showing any peculiar environment or special hazard imposing a duty to provide any special warning, and thus cannot be considered as within the influence of Callaway v. Adams, 252 Ala. 136, 40 So.2d 73.

Paragraph 6 in effect charges that the plaintiff was blinded by the headlights of an automobile facing in her direction from the opposite side of the track.

While the driver of such automobile may or may not have been negligent in failing to dim his lights, the defendant had no authority to regulate such driver's conduct, and if he was negligent such negligence cannot be charged to the defendant. See Eller v. North Carolina R. Co., 200 N.C. 527, 157 S.E. 800.

Paragraph 7 merely attempts to negative contributory negligence on the part of plaintiff, or the driver of the car. It does not purport to charge the defendant with neglignce. The same statement is also applicable to paragraph 9.

Paragraph 8 does not attempt to charge that the defendant failed to maintain proper warning signs, but merely asserts that if there were such signs they were not visible to plaintiff.

It is our conclusion therefore that the complaint in the quo modo, fails to state facts which could be deemed to charge negligence on the part of the defendant as being the proximate cause of plaintiff's injury. The demurrers to the complaint should have been sustained, several grounds thereof pointing out this defect.

It is further our view that the lower court erred in refusing several charges, affirmative in nature, requested by the defendant.

The facts introduced by the plaintiff below tended to show that on a Saturday night after supper the two young ladies, Miss Outlaw and Miss Sanders, were riding in a convertible automobile with their dates, Miss Sanders sitting on the front seat with the driver, and Miss Outlaw and her date occupying the back seat. The group rode from Dothan to a point a short distance beyond Cottondale, Florida, where they turned around and started back to Dothan.

Both plaintiffs testified that they were not familiar with the road, that they did not notice any signs warning of the railroad crossing, and did not take notice of the railroad when it was crossed.

As they approached the crossing on the return trip north an automobile or automobiles were on the opposite side of the tracks facing south. The headlights on this auto-

mobile, or these automobiles, shone directly into the faces of the occupants of the plaintiffs' car.

As they approached the crossing at a speed of about fifteen miles per hour a flat car, about three feet high, was moving slowly across the highway. The glare from the headlights on the opposite side of the tracks shone over this flat car, and it was not seen by either plaintiff.

Each plaintiff denied having seen any warning sign, or having heard any bell ringing, or any whistles blown.

The evidence is undisputed that there was no flagman at the crossing at the time of the collision.

The plaintiff also presented evidence tending to show that there were buildings south of the railroad, and adjacent to the highway which prevented a view of the railroad tracks on either side beyond the highway.

The evidence presented by the defendant tends to show that the highway is level and approaches the railroad approximately at a right angle; that there are several signs on the highway on both sides of the crossing warning of the railroad crossing. A cross arm sign with the warning "Stop, Look, Listen, Look Both Ways for Trains" were on the highway on each side of the crossing, and there was a yellow road sign about 200 feet away stating "Railroad Crossing." Also there was a street light burning near the crossing on the night in question.

The conductor of defendant's train testified that the train was engaged in switching at the time of the accident. As the train backed up eight or ten cars had crossed the highway. He had remained at the crossing to signal traffic, but left when the cars were completely across the highway in order to see the other end of the train and get the signals.

It was during his absence that the collision occurred.

The train was moving very slowly at the time, probably 3 or 4 miles per hour.

Others of the train crew gave testimony to this same effect.

The evidence further shows that the highway is straight on the side north of the tracks "as far as the eye can see," and straight on the south side for about an eighth of a mile.

The picture thus presented tends to show that the driver of plaintiff's automobile ran into a flat car. Although not seen by plaintiff, all proper warning signs had been erected. The crossing was level with the highway, which ran a straight course for some distance on both sides of the crossing. There was no evidence tending to show that smoke, fog or rain was present. We assume that the night was clear. While buildings were on each side of the highway, off of the defendant's right of way, the highway was 62 feet wide. Certainly no peculiar environment is disclosed by the evidence as to the conditions prevailing at the crossing.

The evidence fails to show negligence on the part of the defendant proximately causing her injuries. Under such circumstances the defendant cannot be charged with liability. Southern Ry. Co. v. Lambert, supra; St. Louis-San Francisco Ry. Co. v. Guthrie, supra.

We have consulted the Florida decisions for persuasive authority in our study of this case. It is our conclusion that the doctrines announced by several of these decisions, and the principles deducible therefrom, are in the main entirely in accord with the conclusions reached above. See Kimball v. Atlantic Coast Line R. R. Co., 132 Fla. 235, 181 So. 533; Germak v. Florida East Coast Ry. Co., 95 Fla. 991, 117 So. 391; Cline v. Powell, 141 Fla. 119, 192 So. 628; Martin v. Kenan, 145 Fla. 488, 199 So. 919; Rayam v. Atlantic Coast Line Ry. Co., 119 Fla. 386, 161 So. 415; Clark v. Atlantic Coast Line Ry. Co., 141 Fla. 155, 192 So. 621.

The lower court therefore erred in refusing defendant's charges which were affirmative in nature, and in overruling defendant's motion for a new trial.

Reversed and remanded.