The plaintiffs in these two cases appeal from summary judgments for defendant, Norfolk Southern Railway Company.
A summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c)(3), A.R.Civ.P. In order to defeat a properly supported motion for summary judgment, the nonmovant must present substantial evidence creating a genuine issue of material fact. § 12-21-12, Ala. Code 1975. "Substantial evidence" means "evidence of such weight and quality that fair-minded persons in exercise of impartial judgment can reasonably infer existence of the fact sought to be proved." West v. Founders Life Assurance Co.,547 So.2d 870, 871 (Ala. 1989).
These cases arose following automobile-train collisions at two separate railroad crossings. At one of those crossings, David Alan Lang was killed, and at the other crossing Cinda S. Karjala suffered permanent brain damage and paralysis.
It is undisputed that neither crossing had "active" warning devices, such as flashing lights, bells, or gates.[1] However, both crossings did have "passive" warning devices, such as a "crossbuck"[2] and a stop sign.[3] Additionally, there was evidence in the Lang case that some of the painted warning signs were faded from view, that vegetation had blocked some of the warnings, and that some of the passive warning signs were missing. The evidence concerning the accident involved in the Hamlin case was that there was a dense fog in the area and that Norfolk Southern knew that this area was subject to fog that blocked the passive warning signs.
Both sets of plaintiffs sued Norfolk Southern, alleging, among other things, that it had negligently and/or wantonly failed to provide and maintain adequate warning signals at either of the respective railroad crossings. Norfolk Southern successfully moved for summary judgment as to these claims, arguing that they were preempted by federal law. The plaintiffs appeal, arguing that the preemption doctrine does not apply to bar adjudication of the state tort law claims.
The United States Supreme Court in CSX Transportation Inc. v.Easterwood, 507 U.S. 658, 113 S.Ct. 1732, 123 L.Ed.2d 387
(1993), examined a case similar to these two cases. Easterwood
arose out of an automobile-train collision at a railroad crossing, and it involved a state tort law claim based on an alleged failure to provide adequate warning signals. Thomas Easterwood was killed when a CSX train collided with his truck. His widow contended "that CSX was negligent under Georgia law for failing to maintain adequate warning devices at the crossing." 507 U.S. at 661, 113 S.Ct. at 1736. At the crossing where Easterwood was killed, there were dual flashing lights, crossbucks, advance yellow warning post signs, and pavement markings. Easterwood's widow claimed that CSX had negligently failed to install gate arms and that the flashing lights were positioned in such a manner that the lights were obscured by sunlight. See Easterwood v. CSX Transportation, Inc.,933 F.2d 1548 (11th Cir. 1991).
The trial court entered a summary judgment for CSX; the Eleventh Circuit Court of Appeals affirmed in part and reversed in *Page 1118 
part. The Supreme Court granted certiorari review to address the preemptive effect of the Federal Railroad Safety Act ("FRSA") on negligence claims against railroads.
The purpose of FRSA is "to promote safety in all areas of railroad operations and to reduce railroad-related accidents."45 U.S.C. § 421. FRSA mandates that the Secretary of Transportation study safety problems posed by railroad crossings and develop solutions for those problems. 45 U.S.C. § 431. The Secretary of Transportation is also empowered to prescribe "appropriate rules, regulations, orders, and standards for all areas of railroad safety." § 431(a). Section 434 of Title 45, part of FRSA, contains saving and pre-emption clauses; it reads as follows:
 "The Congress declares that laws, rules, regulations, orders, and standards relating to railroad safety shall be nationally uniform to the extent practicable. A State may adopt or continue in force any law, rule, regulation, order, or standard relating to railroad safety until such time as the Secretary has adopted a rule, regulation, order, or standard covering the subject matter of such State requirement. A State may adopt or continue in force an additional or more stringent law, rule, regulation, order, or standard relating to railroad safety when necessary to eliminate or reduce an essentially local hazard, and when not incompatible with any Federal law, rule, regulation, order, or standard, and when not creating an undue burden on interstate commerce."
"Where a state statute conflicts with or frustrates federal law, the [state statute] must give way" to the federal law.Easterwood, 507 U.S. at 663, 113 S.Ct. at 1737. "In the interest of avoiding unintended encroachment on the authority of the States, however, a court interpreting a federal statute pertaining to a subject traditionally governed by state law will be reluctant to find pre-emption. Thus, pre-emption will not lie unless it is 'the clear and manifest purpose of Congress.' " Easterwood, 507 U.S. at 663-64, 113 S.Ct. at 1737, quoting Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230,67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947).
Following a report by the Secretary of Transportation concerning crossing grades, Congress responded by enacting the Highway Safety Act. The Act provides that States are entitled to federal funds to improve grade crossings. In return, the States are to "conduct and systematically maintain a survey of all highways to identify those railroad crossings which may require separation, relocation, or protective devices, and establish and implement a schedule of projects for this purpose." Easterwood, 507 U.S. at 663, 113 S.Ct. at 1737, quoting 23 U.S.C. § 130(d). The Federal Highway Administration ("FHWA") promulgated regulations to improve grade crossings under the FRSA and the Highway Safety Act.
The issue in Easterwood was whether the Secretary of Transportation had issued regulations covering the same subject matter as Georgia negligence law pertaining to the maintenance of grade crossings and the operation of trains at grade crossings. The Supreme Court held that the federal regulations adopted by the Secretary of Transportation preempted Easterwood's negligence action only insofar as it asserted that CSX's train was traveling at an excessive speed.
The Supreme Court discussed other federal regulations relevant to Easterwood's claim. Under 23 C.F.R. pt. 924 (1992), States receiving federal aid must establish a highway safety program identifying all types of highway hazards and guiding the State in implementing and evaluating remedial measures. In setting priorities, the States are to rank the dangers posed by grade crossings. § 924.9(a)(4). After developing a program, a State must evaluate the effectiveness and costs, § 924.13, and file yearly reports with the FHWA. § 924.15.
The Supreme Court stated that it was not prepared to find preemption on the basis of 23 C.F.R. pt. 924. Specifically, the Court stated:
 "These provisions establish the general terms of the bargain between the Federal and State Governments: The States may obtain federal funds if they take certain steps to ensure that the funds are efficiently spent. On its face, this federal effort to *Page 1119 
encourage the States to rationalize their decisionmaking has little to say about the subject matter of negligence law, because, with respect to the grade crossing safety, the responsibilities of railroads and the State are, and traditionally have been, quite distinct. Before the enactment of FRSA, for example, Georgia's authority over grade crossing improvements did not excuse a railroad's liability in negligence for failing to maintain a safe crossing, see n. 5, supra, just as a jury finding of railroad negligence bore no particular significance on the State's safety efforts beyond that which the State wished to give it. . . . In light of the relatively stringent standard set by the language of § 434 [regarding pre-emption] and the presumption against pre-emption, and given that the regulations provide no affirmative indication of their effect on negligence law, we are not prepared to find pre-emption solely on the strength of the general mandates of 23 CFR pt. 924."
Easterwood, 507 U.S. at 667-68, 113 S.Ct. at 1739-40.
Because these two appeals are concerned with whether federal statutes concerning the use of particular warning devices preempt state law, the portion of the Easterwood opinion discussing those specific statutes is the basis for our holding. The Supreme Court noted that states receiving federal funds must employ devices that conform to standards set out in the FHWA's Manual on Uniform Traffic Control Devices forStreets and Highways ("MUTCD"). 23 C.F.R. § 646.214(b),655.603 (1992).
 "In addition, for projects which involve grade crossings 'located with the limits of or near the terminus of a Federal-aid highway project for construction of a new highway or improvement of [an] existing roadway,' see § 646.214(b)(2), or in which 'Federal-aid funds participate in the installation of the [warning] devices,' regulations specify warning devices that must be installed. See §§ 646.214(b)(3) and (4)."
Easterwood, 507 U.S. at 666, 113 S.Ct. at 1739.
Under § 646.214(b)(3), states must employ automatic gates with flashing light signals as part of any improvement project that concerns a crossing that features one or more of the following features: 1) multiple main line tracks; 2) multiple tracks at or near the crossing that may be occupied by a train so as to obscure the movement of an approaching train; 3) high speed trains operating in areas of limited visibility; 4) high speed trains combined with a moderately high volume of traffic; 5) either a high volume of traffic, high number of train movements, substantial numbers of school buses or trucks carrying hazardous materials, unusually restricted sight distances, continuing accident occurrences, or any combination of these; or 6) where a diagnostic team made up of representatives of the parties of interest in the crossing recommends them.
When railroad crossings do not present any of the conditions set out in § 646.214(b)(3), then "the type of warning device to be installed, whether the determination is made by a State regulatory agency, State highway agency, and/or the railroad, is subject to the approval of FHWA." § 646.214(b)(4).
The Easterwood Court held that the mandate that the States comply with the MUTCD does not cover the subject matter of the tort law of grade crossings. In Easterwood, CSX argued that23 C.F.R. § 646.214(b)(1), along with Part VIII of the TrafficControl Systems for Railroad-Highway Grade Crossings Manual
combined to create a situation where state law was preempted by federal law. The Court found this argument to be implausible.507 U.S. at 669, 113 S.Ct. at 1740.
The Supreme Court next looked to §§ 646.214(b)(3) and (4), which, unlike the foregoing provisions, did establish requirements for the installation of particular warning devices. The Easterwood Court held that "[e]xamination of these regulations demonstrates that, when they are applicable, state tort law is pre-empted. However [CSX] has failed to establish that the regulations apply to [this case], and hence we find [Easterwood]'s grade crossing claim is not pre-empted."507 U.S. at 670, 113 S.Ct. at 1740-41. *Page 1120 
 "[U]nder §§ 646.214(b)(3) and (4), a project for the improvement of a grade crossing must either include an automatic gate or receive FHWA approval if federal funds 'participate in the installation of the [warning] devices.' Thus, unlike the Manual, § 646.214(b)(3) and (4) displace state and private decisionmaking authority by establishing a federal-law requirement that certain protective devices be installed or federal approval obtained. Indeed, §§ 646.214(b)(3) and (4) effectively set the terms under which railroads are to participate in the improvement of crossings. The former section envisions railroad involvement in the selection of warning devices through their participation in diagnostic teams which may recommend the use or nonuse of crossing gates. §§ 646.214(b)(3)(i)(F) and (3)(ii). Likewise, § 646.214(b)(4), which covers federally funded installations at crossings that do not feature multiple tracks, heavy traffic, or the like, explicitly notes that railroad participation in the initial determination of 'the type of warning device to be installed' at particular crossings is subject to the Secretary's approval. In either case, the Secretary has determined that the railroads shall not be made to pay any portion of installation costs. 23 C.F.R. § 646.210(b)(1) (1992). In short, for projects in which federal funds participate in the installation of warning devices, the Secretary has determined the devices to be installed and the means by which railroads are to participate in their selection. The Secretary's regulations therefore cover the subject matter of state law which, like the tort law on which [Easterwood] relies, seeks to impose an independent duty on a railroad to identify and/or repair dangerous crossings."
507 U.S. at 670-71, 113 S.Ct. at 1740-41 (emphasis added).
Where a state law conflicts with or frustrates a federal law, the state law must give way. U.S. Const., Art. VI, cl. 2;Maryland v. Louisiana, 451 U.S. 725, 101 S.Ct. 2114,68 L.Ed.2d 576 (1981). "In the interest of avoiding unintended encroachment on the authority of the States, however, a courtinterpreting a federal statute pertaining to a subjecttraditionally governed by state law will be reluctant to findpre-emption. Thus, pre-emption will not lie unless it is 'theclear and manifest purpose of Congress.' " Easterwood,507 U.S. at 663-64, 113 S.Ct. at 1737 (emphasis added).
In Michael v. Norfolk Southern Ry., 74 F.3d 271 (11th Cir. 1996), a Norfolk Southern train collided with an automobile, killing both occupants. The evidence presented in favor of the plaintiffs (representatives of the driver and passenger) was that the car was travelling only 5 to 10 miles per hour, that it was extremely foggy, that the active warning signals had malfunctioned, and that the crossing bar did not comply with federal regulations. The trial court entered summary judgment in favor of Norfolk Southern holding that the state law claims of negligence were preempted by federal law. The Eleventh Circuit reversed.
Regarding the claims of negligent maintenance and failure to warn the public of the defective nature of the crossing, the Eleventh Circuit held that the state claims were not preempted by 23 C.F.R. § 646.214(b)(3) or (4). The court noted that those regulations deal with the design and installation of new warning devices and not the maintenance of those devices, or the failure to warn the public of defective devices. The court held that these federal regulations were not applicable to the negligent maintenance claim or the failure-to-warn claim, based on Easterwood.
Looking at the evidence submitted in support of the defendant's motion for summary judgment and viewing that evidence in a light most favorable to the plaintiffs, as we are required to do, we hold, in accordance with the Eleventh Circuit's rationale in Michael, that the plaintiffs' claims are not preempted by federal law. Therefore, we reverse and remand.
REVERSED AND REMANDED.
HOOPER, C.J., and ALMON, SHORES, INGRAM, and BUTTS, JJ., concur.
MADDOX and HOUSTON, JJ., dissent. *Page 1121 
[1] "Active warning devices" are defined by 23 C.F.R. § 646.204(j) (1992), as "those traffic control devices activated by the approach or presence of a train, such as flashing light signals, automatic gates and similar devices, as well as manually operated devices and crossing watchmen, all of which display to motorists positive warning of the approach or presence of a train."
[2] A "crossbuck" sign is two narrow white overlapping boards in the shape of an "X." The words "RAILROAD" and "CROSSING" are written across the overlapping boards in black paint.
[3] "Passive warning devices" are defined under23 C.F.R. § 646.204(i) as "those . . . traffic control devices, including signs, markings and other devices, located at or in advance of grade crossings to indicate the presence of a crossing but which do not change aspect upon the approach or presence of a train."