The plaintiff Al Ridgeway, individually and as the personal representative of the estate of his wife Debbie Ridgeway, appeals from summary judgments for the defendants CSX Transportation, Inc. ("CSX"), and the Town of Thorsby, in an action to recover damages for personal injury and wrongful death.[1] We affirm.
A summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Rule 56, Ala.R.Civ.P. In determining, on a summary judgment motion whether there is a genuine issue of material fact, the court must view the evidence in the light most favorable to the nonmoving party, resolving all reasonable doubts against the moving party. The burden is initially on the moving party to make a prima facie showing that no genuine issue of material fact exists and that it is entitled to a judgment as a matter of law. If it makes that showing, then the burden shifts to the nonmoving party to present evidence creating a material factual issue for resolution by a jury so as to avoid the entry of a judgment. Hilliard v. City of Huntsville Electric UtilityBoard, 599 So.2d 1108 (Ala. 1992).
The evidence, viewed in the light most favorable to the plaintiff Al Ridgeway, indicates the following: Debbie Ridgeway suffered *Page 602 
severe personal injuries on March 8, 1995, when the vehicle she was driving collided with an Amtrak passenger train at the Concordia Avenue railroad crossing in the Town of Thorsby, in Chilton County. The accident occurred as Ms. Ridgeway travelled east on Concordia Avenue and across the track and as the train was proceeding north. The stretch of track that crosses Concordia Avenue is owned by CSX. CSX had no ownership interest in, and did not operate, the train. The collision occurred at approximately 12:30 p.m.; the weather was cold, and visibility at the crossing was good. The track is straight and flat on both sides of the crossing, and there were no obstructions, of vegetation or of any other kind, to Ms. Ridgeway's view of the train as it approached Concordia Avenue. The track is slightly elevated at the crossing, so that motorists crossing the track encounter a hump. Ms. Ridgeway approached the crossing from the west — the left side of the track as viewed from the perspective of the train's crew. Approaching the crossing, Ms. Ridgeway encountered a railroad "crossbuck" — a large "X" made of two crossed pieces of wood or metal, painted white, with the words "RAILROAD" and "CROSSING" written across the overlapping pieces in black paint — and a faded "stop" sign. Just east of the crossing, Concordia Avenue intersects with Highway 31, which at that point runs parallel with the railroad track. A traffic light at that intersection regulates access from Concordia Avenue to Highway 31. That traffic light, which was green in the direction of Concordia Avenue at the time of the accident, was visible to Ms. Ridgeway as she approached the crossing. Ms. Ridgeway, a longtime resident of Chilton County, was familiar with the area around the crossing (she shopped regularly at a grocery store near the crossing), and she knew that the railroad track crossed Concordia Avenue at this point.
Two eyewitnesses observed the collision: Mike Smith, the engineer of the train; and Greta Schoolar, the driver of another motor vehicle. Ms. Schoolar had stopped her vehicle at the traffic light at the intersection of Concordia Avenue and Highway 31. She was heading south on Highway 31. She heard the train sounding its horn and looked up to see the train as it approached the crossing. She then noticed Ms. Ridgeway's vehicle as it approached the crossing. She testified:
 "Q. Then, I take it, when you heard the whistle, you looked toward the direction of the train?
"A. Right.
 "A. . . . And I was looking around to my right some. And at first — when I saw the — I saw the front part of the car come up the hill. And I thought it was stopping because it was going so slow. And I guess I probably thought for sure [she was] going to stop because of the train. And she just kept coming over the tracks. She didn't stop.
 "Q. She wasn't trying to beat the train, was she?
 "A. I don't think so because she was going so slow.
 "Q. Were there any cars in front of her?
"A. No.
 "A. He [the train engineer] stayed on the horn. I remember I just — I can just hear that horn. It was just nonstop stayed on the horn [sic]. And I remember hearing squealing. Now, whether that was him [the train engineer] putting the brakes on or whatever, I don't know. I really couldn't tell you.
 "Q. Do you remember if you heard any squealing before the accident or was it after?
"A. I don't remember.
". . . .
 "A. I don't remember. I just remember — I just remember hearing the squealing, and I remember seeing the impact. And I honestly had thought she was going to make it. I thought she was not going to get hit.
"Q. . . . She was pretty far over?
 "A. She had just — I was screaming at her, and I know she couldn't hear me because my windows were up.
"Q. What were you screaming? *Page 603 
 "A. I was just screaming `Stop,' you know. Because she was — she was just staring straight ahead.
"Q. You saw her then in the car?
"A. Right.
"Q. Did you ever see her look to her —
"A. She never looked right or left.
She was just looking straight ahead.
"Q. Looking at the light?
 "A. Looking at the light, I'm sure. And that's what I'm wondering, because she was going so slow. Maybe it was turning red, and she was, just, you know — was just looking at that light. She never looked right or left.
 "Q. During the period of time you saw her?
 "A. Right, the period of time I saw her."
Mike Smith, the train's engineer, testified that the train was traveling at approximately 45 miles per hour just before the collision; this speed was within the maximum speed limit for that stretch of track. He began sounding the train's horn as the train passed the "whistle board";[2] the train's headlights were on and there were no mechanical problems with the train's brakes. When asked about Ms. Ridgeway's actions as she approached the crossing, Smith stated that her vehicle "never did slack up."
51 and Debbie Ridgeway sued CSX and the Town of Thorsby, alleging negligence and wantonness. Specifically, the Ridgeways alleged that CSX had, among other things, negligently or wantonly failed to install active warning devices, such as lights, bells, or gates, at the crossing.[3] They alleged that the Town of Throsby had negligently or wantonly failed to properly maintain the crossing. Specifically, they alleged that the town had failed to maintain the stop sign that was located beside the crossing and facing the eastbound lane of Concordia Avenue, and that the town had otherwise failed to install adequate warning signs, pavement markings, or warning devices at the crossing. Debbie Ridgeway sought compensatory and punitive damages as a result of the severe personal injuries she had suffered when the train hit her vehicle; Al Ridgeway sued derivatively for loss of consortium. Debbie Ridgeway died from her injuries while this action was pending; Al Ridgeway, after being appointed personal representative of her estate, amended the complaint by adding a claim seeking damages for wrongful death. The trial court entered separate summary judgments for CSX and the Town of Thorsby.
The following issues are dispositive of this appeal:
 1) Whether Debbie Ridgeway was contributorily negligent, as a matter of law; and,
 2) Whether there was sufficient evidence of wantonness on the part of CSX to create a fact question for resolution by a jury. (Mr. Ridgeway does not argue on appeal that the summary judgment for the Town of Thorsby was improper as to the wantonness claim; therefore, the wantonness claim against the town is not before us.)[4]
 I. Contributory Negligence
With respect to the first issue, both CSX and the Town of Thorsby contend that Ms. Ridgeway was herself negligent and that *Page 604 
her own negligence was the proximate cause of the accident that resulted in her death. They argue that Ms. Ridgeway failed to stop, look, and listen at the Concordia Avenue crossing, in violation of Ala. Code 1975, § 32-5A-150, and that that failure was unquestionably the proximate cause of her death. Mr. Ridgeway contends that a fact question was presented as to whether Ms. Ridgeway acted reasonably under the circumstances.[5] He argues that a jury could find that the layout of the various intersecting roads adjacent to the Concordia Avenue crossing, the faded stop sign, and the traffic light at the intersection of Concordia Avenue and Highway 31, when considered together, created a confusing and hazardous situation that Ms. Ridgeway, all the while exercising due care, was attempting to deal with at the time of the accident.
Section 32-5A-150 provides in pertinent part:
 "Whenever any person driving a vehicle approaches a railroad grade crossing under any of the circumstances stated in this section, the driver of such vehicle shall stop within 50 feet but not less than 15 feet from the nearest rail of such railroad, and shall not proceed until he can do so safely. The foregoing requirements shall apply when:
". . . .
 "(3) A railroad train approaching within approximately 1,500 feet of the highway crossing emits a signal audible from such distance and such railroad train, by reason of its speed or nearness to such crossing, is an immediate hazard;
 "(4) An approaching railroad train is plainly visible and is in hazardous proximity to such crossing."
The "stop, look, and listen" doctrine set out in § 32-5A-150
is also firmly rooted in our caselaw. See, e.g., Southern Ry. v.Randle, 221 Ala. 435, 438, 128 So. 894, 897 (1930):
 "It is established by our decisions that one who is about to cross a railroad track must stop so near to the track, and his survey by sight and sound must so immediately precede his effort to cross over it, as to preclude the injection of an element of danger from approaching trains into the situation between the time he stopped, looked, and listened and his attempt to proceed across the track. The law thus imposes a continuing duty to see that the way is clear before attempting to cross. Hines v. Cooper, 205 Ala. 70, 88 So. 133
[(1920)]; Central of Georgia Railway Company v. Foshee[Forshee], 125 Ala. 199, 27 So. 1006 [(1899)]. In Cunningham Hardware Co. v. Louisville N.R. Co., 209 Ala. 327, 333, 96 So. 358, 364 [(1923)], it is said of 'what is such reasonable precaution,' as follows:
 "'What is such reasonable precaution was dealt with in Southern Ry. Co. v. Irvin, 191 Ala. 622, 68 So. 139 [(1915)], where, adverting to the rule of Central of Ga. Ry. Co. v. Hyatt, 151 Ala. 355, 43 So. 867 [(1907)], it is said:
 "'It is the duty of the person intending to cross a railway to stop, look, and listen for approaching trains; and this use of the senses must be made within such nearness to the track and under such circumstances as will afford the highly important information to the traveler *Page 605 
traveler and operate as the precaution the most ordinary prudence, in such circumstances, suggests; and the duty, unless excused as indicated, is continuing at least to the extent of excluding the injection of an element of danger into the situation between the time he last stopped, looked, and listened and the time he enters the zone of danger a moving train would create."'"
(Emphasis original.)
Also deeply rooted in Alabama law is the rule that a person who fails to stop, look, and listen before crossing a railroad track is, in the absence of special circumstances, contributorily negligent as a matter of law. In Lambeth v. Gulf Mobile OhioR.R., 273 Ala. 387, 389, 141 So.2d 170, 172 (1962), Justice Simpson, writing for this Court, stated:
 "The general rule, and governing here to sustain the ruling of the trial court, is that where a motorist fails to `Stop, Look 
Listen' before crossing a railroad track, and he thereby runs into or collides with a train on its track at a public crossing, he is guilty of contributory negligence as a matter of law and his negligence will be treated as the sole proximate cause of his injuries. Coe v. Louisville N.R. Co., 272 Ala. 115, 130 So.2d 32 [(1961)]; Watson v. Birmingham Southern R. Co., 259 Ala. 364, 66 So.2d 903 [(1953)]; Johnston v. Southern Ry. Co., 236 Ala. 184, 181 So. 253
[(1938)]; Southern Ry. Co. v. Lambert, 230 Ala. 162, 160 So. 262 [(1935)]; St. Louis-San Francisco Ry. Co. Guthrie, 216 Ala. 613, 114 So. 215, 217, 66 A.L.R. 1110 [(1927)]; Louisville N.R. Co. v. Outlaw, 36 Ala. App. 278, 60 So.2d 367
[(1951)], cert. den., 257 Ala. 585, 60 So.2d 377 [(1952)]."
And in Callaway v. Adams, 252 Ala. 136, 142, 40 So.2d 73, 77-78
(1949), this Court wrote:
 "The contention that there was error in refusing the general affirmative charge as to the contributory negligence of plaintiff is sought to be sustained by the generally stated rule of absolute duty at any railroad crossing where cars and locomotives are liable to be moving of anyone attempting to cross the railroad track to stop, look and listen, and a denial of recovery as for simple initial negligence of the railroad if the failure to discharge such duty proximately caused the injury. Atlantic Coast Line R. Co. v. Jones, 202 Ala. 222, 80 So. 44 [(1918)]; Johnston v. Southern [Ry. Co., 236 Ala. 184, 181 So. 253 [(1938)].
 "The doctrine is rested on the duty of the traveler to keep a continuous lookout as he approaches a railroad crossing until he can see that no train is dangerously near. So, when the undisputed facts disclose that by a proper lookout he could not fail to see the train, he cannot acquit himself of contributory negligence by saying he looked and did not see it.
 "But it cannot be affirmed as a matter of law in every case and under all circumstances that there is an absolute duty to stop, look and listen before a traveler may go upon a railroad crossing, as where one, in the exercise of reasonable care, did not know of the crossing. `What is, or is not, ordinary care often depends upon the facts of the particular case. The rule, "stop, look, and listen," is not arbitrary or invariable as to time and place. It may depend in some measure upon the familiarity of the one passing, with the place of crossing . . .'. Louisville N.R. Co. v. Williams, 172 Ala. 560, 578, 55 So. 218, 223 [(1911)].
 "Thus the principle has been developed that the arbitrary rule of stop, look and listen is affected by whether or not the plaintiff knew or by reasonable care could have known he was about to cross the railroad tracks. Sloss-Sheffield Steel Iron Co. v. Willingham, 243 Ala. 352, 10 So.2d 19 [(1942)]. The rule is here governing and required the question of the plaintiff's alleged negligence in failing to stop, look, and listen to be submitted to the jury for determination.
 "This is settled doctrine in this jurisdiction. Other cases illustrative are: Sloss-Sheffield Steel Iron Co. v. Peinhardt, 240 Ala. 207, 211, 199 So. 33 [(1940)]; Central of Georgia R. Co. v. Graham, 220 Ala. 645, 647, 127 So. 213, 215 [(1930)]; Cunningham Hardware Co. v. Louisville N.R. Co., 209 Ala. 327, 332, 96 So. 358, 363 [(1923)]." *Page 606 
See also McCullough v. L N R.R., 396 So.2d 683 (Ala. 1981);Stallworth v. Illinois Central Gulf R.R., 690 F.2d 858 (11th Cir. 1982) (surveying Alabama law); Gibson v. Norfolk Southern R.R., supra.
After carefully considering the evidence presented in this case, including the photographs of the Concordia Avenue crossing, we conclude that the only reasonable inference that can be drawn from that evidence is that Ms. Ridgeway's tragic death was the result of her own failure to exercise reasonable care. Contributory negligence is an affirmative and complete defense to a claim based on negligence. In order to establish contributory negligence, the defendant bears the burden of proving that the plaintiff 1) had knowledge of the dangerous condition; 2) had an appreciation of the danger under the surrounding circumstances; and 3) failed to exercise reasonable care, by placing himself in the way of danger. See Knight v. Alabama Power Co., 580 So.2d 576
(Ala. 1991). In the present case, CSX and the Town of Thorsby had the burden of proving 1) that Ms. Ridgeway failed to exercise reasonable care (i.e., had failed to stop, look, and listen) and 2) that that failure was the proximate cause of her accident.Norfolk Southern R.R. v. Thompson, 679 So.2d 689 (Ala. 1996).
The record indicates that CSX made a prima facie showing that Ms. Ridgeway was aware of the existence of the Concordia Avenue railroad crossing and that she understood or should have understood the danger posed by the crossing. The undisputed evidence indicated that Ms. Ridgeway was familiar with the area around the crossing and that she traveled it on a regular basis during her trips to and from a nearby grocery store. The crossing was clearly marked with a standard "crossbuck" facing the eastbound lane, in which Ms. Ridgeway was traveling, and the presence of the track itself was highlighted by the hump in the road where the track crossed Concordia Avenue. There were no obstructions in the vicinity of the crossing that could have obscured Ms. Ridgeway's view of the "crossbuck" or the track.
The record also indicates that Ms. Ridgeway, for whatever reason, failed to exercise reasonable care, by placing herself in harm's way. The only two eyewitnesses to the accident testified that Ms. Ridgeway did not stop, look, and listen before crossing the track, as required by Alabama law. The undisputed evidence indicated that had she done so she would have realized that the train was dangerously close to the crossing and, one can assume, would not have attempted to cross in front of the train. The track is straight and flat on both sides of the crossing and, as noted, there were no obstructions to Ms. Ridgeway's view of the train as it approached the crossing. The train's engineer testified, without dispute, that he sounded his horn as he approached the crossing and that he had the train's headlights on. The other eyewitness, Ms. Schoolar, corroborated the engineer's testimony that the train's horn was sounding as the train approached the crossing. There is a rebuttable presumption that a person in possession of his normal faculties will follow the law of self-preservation and exercise ordinary care for his own personal protection. Alabama Great Southern R.R. v. Evans,288 Ala. 25, 256 So.2d 861 (1972). The evidence was sufficient to overcome this presumption with respect to Ms. Ridgeway. Mr. Ridgeway presented no evidence that would rebut the defendants' prima facie showing that Ms. Ridgeway was negligent as a matter of law.
We conclude that the undisputed facts were such that all reasonable people would logically have to draw the same conclusion — that Ms. Ridgeway was contributorily negligent.
We note that we have fully considered the argument that Ms. Ridgeway could have been distracted by the traffic and the traffic light at the intersection of Concordia Avenue and Highway 31. Although we agree with Mr. Ridgeway that one could reasonably infer, especially from Ms. Schoolar's testimony, that Ms. Ridgeway was distracted as she approached the crossing, we do not agree that such an inference creates a jury question with respect to the issue of contributory negligence. Ms. Ridgeway was under a statutory and common-law duty to stop, look, and listen before she attempted to cross the track. Nothing in the evidence suggests she *Page 607 
was in any way prevented from doing that. The undisputed evidence clearly indicates that the accident would not have occurred had Ms. Ridgeway looked and listened sufficiently to note the noise and the appearance of the approaching train.
We also recognize, as Mr. Ridgeway correctly points out, that the issue of contributory negligence is generally one for a jury to resolve. See Norfolk Southern R.R. v. Thompson, supra; SavageIndustries, Inc. v. Duke, 698 So.2d 856, 859 (Ala. 1992) ("[t]he issue of contributory negligence cannot be determined as a matter of law where different inferences and conclusions may reasonably be drawn from the evidence"). In fact, this Court has been most reluctant over the years to find contributory negligence as a matter of law. See, e.g., Central Alabama Electric Co-op. v.Tapley, 546 So.2d 371, 381 (Ala. 1989), wherein a majority of this Court, as it was then constituted, went so far as to state, in note 8, that it "might be willing to again entertain, in an appropriate case, the idea of adopting the doctrine of comparative negligence." Of course, this Court later decided not to abandon the doctrine of contributory negligence, which has now been the law in Alabama for approximately 167 years. See Williamsv. Delta International Machinery Corp., 619 So.2d 1330 (Ala. 1993).
Thus, it remains the law in this state that when a motorist, in violation of § 32-5A-150, fails to stop, look, and listen before crossing a railroad track and that failure results in injury or death caused by a collision with a passing train, the motorist is guilty of contributory negligence as a matter of law, unless special circumstances existing at the crossing suggest that even by keeping a proper lookout he could not have been aware of the presence of the railroad crossing or of the danger presented by that crossing. See Lambeth v. Gulf; Mobile OhioR.R., supra, and the cases cited therein;[6] Callaway v. Adams, supra, and the cases cited therein; and Norfolk Southern R.R. v.Thompson, supra; see also Louisville N.R.R. v. Williams,370 F.2d 839 (5th Cir. 1966) (citing a number of Alabama cases *Page 608 
recognizing both the general rule that it is contributory negligence as a matter of law for a motorist to fail to stop, look, and listen before crossing a railroad track and the exception to that rule that may result from an unusually dangerous crossing); National Railroad Passenger Corp.,("Amtrak") v. H P, Inc., 949 F. Supp. 1556 (M. D. Ala. 1996) (holding under Alabama law that the driver of a truck was contributorily negligent as a matter of law in failing to yield the right-of-way to an approaching train).
Because Ms. Ridgeway's contributory negligence was a complete defense to the negligence claims against CSX and the Town of Thorsby, the summary judgments were proper as to those claims.
 II. Wantonness 
With respect to the second issue, Mr. Ridgeway contends that he presented substantial evidence indicating that CSX was aware that previous accidents had occurred at the Concordia Avenue crossing and that CSX had received complaints from the Town of Thorsby questioning the safety of the Concordia Avenue crossing.[7]
According to Mr. Ridgeway, that evidence "made out a case for the jury on the issue of CSX's wantonness." CSX contends that, having erected the "crossbuck" facing the eastbound lane on Concordia Avenue, it. was at the time of the accident in full compliance with Alabama law. CSX argues that, as a matter of law, its compliance with Alabama law precludes any finding of wantonness.
Wantonness is conduct "carried on with a reckless or conscious disregard of the rights or safety of others." Ala. Code 1975, § 6-11-20 (b)(3). Specifically, wantonness involves the conscious doing of some act, or the omission of some duty, under knowledge of existing conditions and while conscious that from the doing of such act or omission of such duty injury will likely or probably result. Before a party can be said to be guilty of wanton conduct, it must be shown that, with reckless indifference to the consequences, he consciously and intentionally did some wrongful act or omitted some known duty that produced the injury.Hamme v. CSX Transp., Inc., 621 So.2d 281 (Ala. 1993).
Section 37-2-80, Ala. Code 1975, provides:
 "Every railroad company must erect, at all points where its road crosses any public road, at a sufficient elevation to admit of the free passage of vehicles of every kind, a sign, with large and distinct letters placed thereon, to give notice of the proximity of the railroad and warn persons of the necessity of looking out for the cars."
The parties have cited no other statutory provision requiring a railroad to erect and maintain signs or other warning devices at railroad crossings, and we have found no other such provision. See Watson v. Birmingham Southern R.R., 259 Ala. 364,66 So.2d 903 (1953); see, also, Radford v. Seaboard System R.R.,828 F.2d 1552 (11th Cir. 1987). In Alabama, there is no duty on the part of a railroad, beyond that set out in § 37-2-80, to erect signs at a railroad crossing or to otherwise take special steps to warn approaching motorists of the presence of a railroad crossing, unless the crossing is a hazardous one in the sense that it cannot be traversed safely through the exercise of ordinary care. See Lambeth v. Gulf Mobile Ohio R.R., supra, wherein this Court stated:
"The controlling principle of law, many times reaffirmed by this court, is well stated in Southern Railway Co. v. Lambert,230 Ala. 162, 160 So. 262 [(1935)], as follows:
 "`This court, in line with the great weight of authority, has declared the rule that, in the absence of statute, or special conditions of hazard to motorists, there is no duty on the railway company to provide special warning or safeguards to motorists, either in the day or nighttime, to prevent collisions with cars standing on such crossing. The law requires motorcars to be equipped with *Page 609 
adequate headlights, and that they be not run at such speed that an obstruction, such as a freight car, cannot be discovered in time to come to a stop. Others are not required to take precautions against one's negligence. Otherwise stated, one may assume that another will take ordinary care.
 "`So it is widely held that the negligence of the driver of the motorcar will be treated as the sole proximate cause of injury resulting from running into a standing railway car at a crossing, unless something intervenes calling for special precautions on the part of the railway employees; some condition of hazard that may lead to a collision, notwithstanding ordinary care on the part of the driver of the motorcar.'
 "Coe v. Louisville Nashville R. Co., 272 Ala. 115, 130 So.2d 32 [(1961)]; Watson v. Birmingham Southern R. Co., 259 Ala. 364, 66 So.2d 903 [(1953)]."
273 Ala. at 389-90, 141 So.2d at 172; see also Westbrook v.Gibbs, 285 Ala. 223, 231 So.2d 97 (1970).
The undisputed evidence indicated that CSX had complied with § 37-2-80 by erecting the "crossbuck" and that it had placed the crossbuck in such a prominent location beside the eastbound lane on Concordia Avenue that Ms. Ridgeway could have easily seen it as she approached the crossing. In addition, it is undisputed that Ms. Ridgeway was familiar with the area around the crossing and that she knew, or should have known, that the track was there.[8] Furthermore, the undisputed evidence indicated that no special conditions existed at the crossing that could have rendered the crossing unusually dangerous even if Ms. Ridgewayhad exercised reasonable care as she crossed the track. As previously noted, the track on both sides of the crossing is straight and flat and there were no obstructions blocking Ms. Ridgeway's view. Therefore, this case is not like NorfolkSouthern R.R. v. Thompson, supra, where the evidence indicated that, because of a sharp curve in the track near the crossing, a motorist would have limited visibility and, as a result, could find himself in the path of a fast-moving train even though he had exercised reasonable care in attempting to cross the track; and this case is not like Callaway v. Adams, supra, where the evidence indicated that the plaintiff did not know the railroad crossing was ahead of him and could not have discovered its presence through the exercise of reasonable care in time to avoid a collision with the train, because of the grading of the road in front of the crossing and the fact that overhanging tree branches had obscured the crossing's signal light from view. *Page 610 
We conclude that CSX was under no statutory or common-law duty to take steps to have active warning devices erected at the Concordia Avenue crossing. Based on this conclusion, we hold that CSX's summary judgment was also proper as to the wantonness claim, because if CSX breached no duty imposed by law then it could not be guilty of wantonness.
 III.
The summary judgments are affirmed.
AFFIRMED.
HOOPER, C.J., and MADDOX, ALMON, SHORES, COOK, SEE, and LYONS, JJ., concur.
KENNEDY, J., dissents.
[1] The complaint also named Chilton County, the Chilton County Commission, and the individual members of the county commission as defendants. The trial court entered a separate summary judgment for those defendants; that judgment was not appealed.
[2] A "whistle board" is a sign marker the railroad places beside the track to remind the train crew that it is approaching a crossing and needs to sound the horn See Gibson v. Norfolksouthern Corp., 878 F. Supp. 1455 (N.D. Ala 1994), Aff'd, 48 F.3d 536 (11th Cir. 1995).
[3] "Active warning devices" by 23 C.F.R. § 646.204(j) (1997), as "those traffic control devices activated by the approach or presence of a train, such as flashing light signals, automatic gates and similar devices, as well as manually operated devices and crossing watchmen, all of which display to motorists positive warning of the approach or presence of a train.
[4] Relying on CSX Transportation, Inc. v. Easterwood,507 U.S. 658, 113 S.Ct. 1732, 123 L.Ed.2d 387 (1993), CSX also argues that the state law claims were preempted by the Federal Railroad Salety Act of 1970, 45 U.S.C. § 421 et seq. (1988 ed. and Supp. II); the Highway Safety Act of 1973, 23 U.S.C. § 130 et seq.; and the federal regulations promulgated thereunder by the Federal Highway Administration. However, in light of our holding that the summary judgment is due to be affirmed on other grounds, we pretermit any discussion of the preemption issue 
[5] Although Mr. Ridgeway argues strenuously to the contrary, we note that Hamlin v. Norfolk Southen R.R., 686 So.2d 1115 (Ala. 1996), does not control either of the issues in this case. InHamlin, this Court reversed summary judgments in two consolidated cases involving vehicle-train collisions at railroad crossings. The summary judgments in those cases were based solely on the doctrine of federal preemption. The sole issue addressed by this Court was whether the trial court had erred in ruling that the plaintiff's claims were preempted. We held that the trial court had erred, slating that "the plaintiffs' claims are not preempted by federal law." 686 So.2d at 1120. Mr. Ridgeway argues that because we did not affirm on other grounds, which we could have done if the records had clearly demonstrated that the defendants were entitled to judgments as a matter of law, Smith v. EquifaxServices, Inc., 537 So.2d 463 (Ala. 1988), then we must have rejected the other arguments made by the defendants touching on the issues of initial legal liability (duty to install active warning devices) and contributory negligence. Suffice it to say that this Court in Hamlin was first and foremost concerned with the preemption issue the trial court had not ruled on the other issues, and this Court was unwilling to affirm the summary judgments based on the state of the records in those cases.
[6] In Lambeth, this Court affirmed a judgment for the defendant railroad, based on a holding that the plaintiff was contributorily negligent as a matter of law. This Court discussed the facts, noting that the special circumstances mentioned inCallaway v. Adams were not present:
 "Pretermitting discussion of the negligence, vel non, of the defendant, we address the question of whether or must the plaintiff was guilty of contributory negligence which proximately caused his damages. We hold that he was and this is dispositive of the case.
 "The evidence showed that the accident occurred about 10:00 P.M. on a clear night when the appellant had a clear view of the crossing several hundred yards before reaching it; there was no fog or smoke or anything to obstruct his vision; although he was not a regular traveler on that road, he traveled it about twice a year, had been over it four or five months previously, and knew that the track was there. There was a gradual curve in the road but there was a straight stretch of road for a considerable distance before reaching the crossing. Some considerable distance from the crossing there was a circular warning sign, plainly visible, bearing the letters `R/R'. In addition to this sign, also visible for a considerable distance from the track, there were two `crossbuck' signs and all Alabama `Stop' sign. Appellant testified he knew these signs were warnings of a railroad crossing, but claimed he did not notice them, but instead was traveling about 40 to 45 miles per hour and did not reduce his speed until within about 38 feet of the train, when he first saw it on the track blocking the crossing, which was too late to avert the crash; he knew he should not override his lights, meaning `drive so fast that you can't see an object in time to stop', which he was doing; he was traveling at such a rate of speed that when he saw the tram on the crossing he could not then stop his automobile to avoid the collision.
". . . .
 "Appellant argues that the rule of Callaway v. Adams, 252 Ala. 136, 40 So.2d 73 [(1949)], controls the instant situation. That case, however, is without influence here. There, because of the peculiar environment surrounding the railroad crossing, special conditions of hazard such as the topography and grade and course of the highway and overhanging tree limbs obstructing the signal light, the presence of the train could not, by the exercise of reasonable care, be discovered until immediately upon it, thus disclosing an environment producing such special circumstances or conditions of hazard as made it a jury question as to whether or not the railroad company was guilty of negligence, and whether or not plaintiff — a stranger to the situation — was guilty of contributory negligence. Here, however, no conditions of hazard and no peculiar environment confronted the plaintiff. Clearly then, the Callaway v. Adams case, supra, is inapplicable."
273 Ala. at 389-90, 141 So.2d at 171-72.
[7] Much of this evidence was excluded by the trial court on various grounds, and Mr. Ridgeway challenges the trial court's rulings in this respect. Because our holding would not be different if we considered the excluded evidence, we will assume for the purposes of this appeal that all of the evidence was admissible on the question of wantonness.
[8] This court has emphasized that a motorist's knowledge of the existence of a railroad crossing weighs heavily against a finding that the crossing was hazardous and that the railroad therefore. had a heightened duty of care. In Coe v. Louisville Nashville R.R., 272 Ala. 115, 118, 130 So.2d 32, 34-35 (1961) this court explained:
 "There were two cross-arm signs at the crossing. There was evidence to the effect that these signs were not visible to vehicles approaching the crossing from the west because of trees which hid them from view. This was the situation at a point four hundred feet west of the crossing and perhaps even closer according to the evidence.
 "But plaintiff's intestate lived within three or four blocks of the crossing. It is without dispute that he was thoroughly familiar with the crossing.
 "Hence the inability of plaintiff's intestate to see the cross-arm signs at the time of the accident because of the trees does not add to plaintiff's case.
 "The object of such signals is to impart notice to the traveler of the location of the railroad track. But when one is shown to already possess that notice, the failure to properly display the signs will not give rise to a cause of action or support a charge of negligence based on such omission for the manifest reason that the one for whose benefit the sign w as required already possessed the knowledge that the sign was intended to impart. Cincinnati N.O. T.P. Ry. Co. v. Wallace's Adm'r, 267 Ky. 661, 103 S.W.2d 91 [(1937)]. Those signs were designed to show the location of the train track not to inform a traveler of the approach of a train. As shown above plaintiff's intestate was thoroughly familiar with the crossing.
 "We are of the opinion that the plaintiff completely railed to meet the burden which was upon her to show a duty on the part of the defendants to give notice of the fact that the train was blocking the crossing at the time in question and that a failure to give such notice was the proximate cause of the collision and the consequent injury and death of plaintiffs intestate."