The plaintiff appeals from a summary judgment in favor of the defendant Torrence Cablevision USA, Inc. ("Torrence"). On March 24, 1999, Nina S. Mitchell sued Torrence for damages based on injuries she sustained when she tripped and fell over a coaxial television cable in her yard. In her complaint, Mitchell alleged Torrence had been guilty of negligence and wantonness in causing her injuries.
On February 3, 2000, the trial court entered a summary judgment in favor of Torrence on Mitchell's claims of negligence and wantonness. The trial court's judgment contained no findings of fact or conclusions of law, but Torrence's answer to Mitchell's complaint argued the affirmative defenses of contributory negligence and assumption of the risk.
Mitchell appealed to the Supreme Court of Alabama, which transferred the appeal to this court, pursuant to § 12-2-7(6), Ala. Code 1975.
The record indicates that in December 1989, Mitchell and her husband purchased the home in which they reside. In 1993, *Page 1256 
Gulf Rural America Cable Company installed television cable service at the Mitchell home. Gulf Rural buried the cable line from the road to the Mitchell house. In 1995, a road grader operating on the road in front of the Mitchell home cut the television cable. Torrence then reinstalled Ms. Mitchell's television cable by installing a cable line that ran from the right side of her home diagonally across her front yard to a cable box located further down the street.[1] Torrence did not bury the cable nor hang the cable off the ground. Torrence laid the cable on Mitchell's grass.
Mitchell testified in her deposition that the cable remained lying across her yard for four years, and that she walked past and drove past the cable every day for those four years. On January 13, 1999, Mitchell walked outside into her yard to call her children inside. Upon summoning her children, she turned to walk back inside her house. Mitchell testified in her deposition that she had taken approximately six or seven steps back toward her house when her left foot became entangled in the cable and she was caused to fall and injure her leg. It is undisputed that Mitchell knew that the cable was lying across her yard. Mitchell testified that, although she did not see the cable when she initially walked outside to call her children, she knew that she stepped over the cable to arrive at the position in her yard from which she called her children.
A party is entitled to a summary judgment if no genuine issue of material fact exists and the moving party is entitled to a judgment as a matter of law. Rule 56(c), Ala.R.Civ.P. . "Our standard of review in cases involving summary judgments is de novo." Lee v. Burdette, 715 So.2d 804, 806 (Ala.Civ.App. 1998). "In reviewing the disposition of a motion for summary judgment, we utilize the same standard as that of the trial court in determining whether the evidence before the court made out a genuine issue of material fact" and whether the movant "is entitled to a judgment as a matter of law." Bussey v. John DeereCo., 531 So.2d 860, 862 (Ala. 1988); Rule 56(c)(3) Ala.R.Civ.P. "[I]f the moving party makes a prima facie showing that no genuine issue of material fact exists, then the burden . . . shifts to the non-movant." The non-movant must then "show `substantial evidence' in support of his position." Bass v. SouthTrust Bank,538 So.2d 794, 797-798 (Ala. 1989). Evidence is "substantial" if it is "of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life AssuranceCo., 547 So.2d 870, 871 (Ala. 1989). Our review is further subject to the caveat that this court must review the record in a light that is most favorable to the nonmovant and must resolve all reasonable doubts against the movant. Hanners v. Balfour Guthrie,Inc., 564 So.2d 412, 413 (Ala. 1990).
A summary judgment is generally not appropriate in a negligence action. There are, however, certain circumstances in which a summary judgment may be proper in a negligence action. Gordon v.Mobile Greyhound Park, 592 So.2d 208, 210 (Ala. 1991); Morrisonv. City of Ozark, 575 So.2d 1110, 1111 (Ala. 1991); see also,Sisk v. Heil Co., 639 So.2d 1363, (Ala. 1994) *Page 1257 
(summary judgment appropriate where plaintiff, as a reasonable adult, should have been aware of need for caution); Harvell v. Johnson,598 So.2d 881 (Ala. 1992) (summary judgment appropriate in negligence case where plaintiff was aware of and appreciated the danger); Morrisonv. City of Ozark, 575 So.2d 1110 (Ala. 1991) (summary judgment proper in negligence case where no duty found); and Duffy v. BelAir Corp., 481 So.2d 872 (Ala. 1985) (summary judgment proper when only question of law exists).
Mitchell argues that the trial court erred in holding that, as a matter of law, she was contributorily negligent, and that the trial court erred in entering the summary judgment on her wantonness claim because, she alleges, the condition was not open and obvious.
Torrence argues Mitchell had knowledge of the hazard of the cable, that she appreciated the danger it posed, and that she failed to provide sufficient evidence of causation.
"Contributory negligence is an affirmative and complete defense to a claim based on negligence." Ridgeway v. CSX Transp. Inc.,723 So.2d 600, 606 (Ala. 1998). Furthermore, "the question of the existence of contributory negligence is normally one for the jury." Wyser v. Ray Sumlin Constr. Co., 680 So.2d 235, 238 (Ala. 1996). It is "only when the facts are such that all reasonable men must draw the same conclusion that contributory negligence is ever a question of law for the court." Id.
The three essential elements of contributory negligence are knowledge of the condition, appreciation of the danger, and failure to exercise reasonable care with such knowledge and appreciation of the danger. Wallace v. Alabama Power Co.,497 So.2d 450, 457 (Ala. 1986). To support the defense of assumption of the risk, the evidence must show "(1) knowledge by the plaintiff of the condition; (2) appreciation by the plaintiff of the danger or risk posed by that condition; and (3) a voluntary, affirmative exposure to the danger or risk." Sprouse v. Belcher Oil Co.,577 So.2d 443, 444 (Ala. 1991).
It is undisputed that Mitchell had knowledge of the cable lying across her yard. Mitchell testified in her deposition:
"Q. All right. How often did you go past it?
"A. Every day.
"Q. Would you walk past it every day?
"A. Walk past it, drive past it.
 "Q. When you'd walk by it, what would you do, would you just step over it?
"A. Yes, sir."
Mitchell's deposition testimony also reflects that she clearly appreciated the danger the cable posed. Mitchell testified:
 "Q. (By Mr. Bowron:) It's alleged in there that you complained to Torrence Cable 40 or 50 times about this condition?
"A. Yes, sir.
"Q. And why did you complain?
 "A. My cable was laying across my front yard and I've had children trip over it, it was out a lot of times. With it laying on the ground and everything, the wire continuously was like nicked and stuff, sun-dried. I don't know how to describe it.
"Q. But the cable was laying on the ground? *Page 1258 
"A. Yes, sir.
 "Q. It wasn't raised up an inch or two, it was just pulled across the yard?
"A. On the ground.
". . . .
"Q. Why would you step over it?
"A. I didn't want to fall.
 "Q. I think you said in your complaint that you complained 40 or 50 times to Torrence because you felt that it was a hazardous condition to have it on the ground like that?
"A. Yes, sir.
"Q. And what hazard did it pose to you on the ground?
 "A. The hazard of not only someone in my family, but neighbors, friends, relatives, anyone who come[s] in my yard, of falling.
 "Q. Did you consider it a hazard to you about getting tangled or tripping over it?
"A. I considered it a hazard.
 "Q. And your concern was that somebody would step on it or trip over it, correct?
"A. Yes, sir.
"Q. And fall, correct?
"A. Yes, sir.
 "Q. And you considered that to be the same hazard as to you, that you would trip over it if you got tangled up in it, correct?
"A. Yes, sir.
 "Q. And it was this hazard and this concern about tripping and falling over it that you'd had for approximately four years before your accident?
"A. Yes, sir."
Mitchell testified in her deposition that when she walked out into her yard to summon her children she did not see the cable on the grass, but that she knew she had to have stepped over it in order to arrive at the part of her yard from which she called her children. Mitchell testified that as she turned to walk back to her house she knew the cable was lying in her yard and that she was used to it being in a certain spot, but that it had somehow moved. Mitchell testified:
 "Q. As you turned to walk back to the house, you knew that cable was there, did you not?
"A. Yes, sir.
 "Q. And you knew it posed a hazard for tripping, as we have talked about, correct?
"A. Yes, sir.
"Q. And can you tell me why you didn't step over it this time?
"A. I didn't see it.
"Q. But you knew it was there?
"A. Yes, sir."
Mitchell's deposition testimony indicates that she had knowledge of the condition, appreciated the danger the cable posed, and failed to exercise reasonable care with this knowledge and appreciation of the danger. Therefore, we conclude that Mitchell did not present substantial evidence to defeat Torrence's properly supported motion for a summary judgment on the issue of contributory negligence.
We also conclude that Mitchell did not present substantial evidence on the issue of assumption of the risk. Mitchell testified that she had knowledge of the condition, that she appreciated its danger, and *Page 1259 
that she voluntarily exposed herself to that danger by walking out into her yard with knowledge of the hazard that the cable posed to her.
Mitchell argues she did not have knowledge of the danger the cable posed. We disagree. Mitchell's own testimony clearly reflects that she did have knowledge of the danger the cable posed and that she did fail to exercise reasonable care. Mitchell further argues that she "presented substantial evidence that she did not fail to exercise reasonable care in walking in her own front yard." We disagree. Again, Mitchell's own testimony reflects that she knew the cable was in her yard, but that she failed to see it. Furthermore, we find the record devoid of any evidence, especially "substantial evidence," tending to prove she exercised reasonable care in walking in her own front yard.
Therefore, we conclude that Mitchell failed to present substantial evidence to defeat Torrence's properly supported motion for a summary judgment on her claim of negligence. The summary judgment is affirmed insofar as it relates to Mitchell's negligence claim.
Mitchell also argues that Torrence acted wantonly. She says she presented evidence indicating that Torrence knew that its failing to hang or bury the cable would likely cause injury. Mitchell argues that Torrence had a duty, pursuant to the National Electric Safety Code, adopted in Torrence's franchise agreement, to either bury or hang the television cable.
Initially, we note that contributory negligence and assumption of the risk do not bar a wantonness claim. See Tyler v. City ofEnterprise, 577 So.2d 876, 878 (Ala. 1991); and White v. Pratt,721 So.2d 210, 213 (Ala.Civ.App. 1998). Our supreme court has defined wantonness as "the conscious doing of some act, or the omission of some duty, under knowledge of existing conditions and while conscious that from the doing of such act or omission of such duty injury will likely or probably result." Ridgeway, 723 So.2d at 608. That court added: "Before a party can be said to be guilty of wanton conduct, it must be shown that, with reckless indifference to the consequences, he consciously and intentionally did some wrongful act or omitted some known duty that produced the injury." Id.
The record reflects that on July 11, 1996; September 5, 1996; September 17, 1996; October 17, 1996; April 15, 1997; and October 22, 1998, Mitchell telephoned Torrence for service. On the service ticket prepared for each of those calls, the "customer problem" was recorded as "bury cable." The record also contains a copy of Torrence's franchise agreement with the Mobile County Commission. Section four of the franchise agreement states, in part, that "[a]ll the construction of the Company including installations, shall conform to the National Electric Safety Code, the Statutes of the State of Alabama, and all State, Federal and County ordinances." Mitchell argues that the adoption of the National Electric Safety Code in Torrence's franchise agreement creates a duty owed by Torrence. We agree.
Barry Breithaupt[2] testified in his deposition that Torrence has no policy regarding whether to bury or hang cable running from the street to a customer's home. Breithaupt testified: *Page 1260 
 "Q. Now, are you — are you saying that it's the policy of Torrence Cablevision is that the drop line, the line from the street — the point of the street to the customer home is to be either strung in the air or buried in the ground?
"A. We have no policy.
"Q. No policy?
 "A. No. It's standard operating — if someone is out of cable we lay it on top of the ground, that person wants a picture. We do it. We talk with that customer. If they want a picture we get them a picture. We're just trying to satisfy them 100 percent.
 "Q. I just want to make sure I understand your testimony. There is no policy about Torrence — let me restate that. Torrence Cablevision has no policy providing whether the cable from the point of the street to the customer house is to be strung in the air or buried in the ground. There is just no policy whatsoever?
". . . .
 "A. There is no written policy. And as far as procedure, technicians have been trained to get that person a picture on the TV. And as I told you earlier, it's standard operating procedure for us to lay it on the ground just to get a picture. Just to, you know, get that customer happy."
It is undisputed that the National Electric Safety Code was adopted into Torrence's franchise agreement. The record contains an affidavit from Owen S. Posey, an electrical engineer registered in Alabama, Louisiana, Maryland, Mississippi, Texas, and Wyoming. Posey testified in his affidavit that the cable installed at Mitchell's home is considered a "communication line" as that term is defined by the National Electric Safety Code. Furthermore, Posey testified that according to the National Electric Safety Code the cable is required to be hung overhead with a minimum vertical clearance of nine and one half feet, or buried at a minimum depth of 24 inches.
We conclude that the adoption of the National Electric Safety Code in Torrence's franchise agreement, coupled with Posey's undisputed affidavit, creates a duty owed by Torrence. The record also indicates, based upon Torrence's own service-call records, that it was aware of the need to bury or hang overhead the cable running from the road to Mitchell's house.
Torrence argues that because the cable was an open and obvious danger, the summary judgment was proper as to the wantonness claim. Torrence's arguments are based upon business-invitee caselaw. We find no Alabama caselaw, other than those cases addressing business-invitee claims, in which courts have ruled against wantonness claims on these grounds. The facts presented in this case are distinguishable from those in a business-invitee claim.
Mitchell is a property owner to whom we have concluded Torrence owed a duty. It is undisputed that Mitchell alerted Torrence to the problem caused by the fact that the cable was lying across her yard. As we have previously stated, Torrence's franchise agreement specifically incorporated the National Electric Safety Code, which requires cables like the one installed at Mitchell's residence to be either buried at a depth of 24 inches or hung overhead at a minimum height of nine and one half feet. The record contains evidence indicating Mitchell made six service requests asking Torrence to bury the cable *Page 1261 
in her yard. Torrence, for reasons not fully explained, failed to bury the cable. The record indicates Torrence was on notice, both by the adoption of the National Electric Safety Code and by Mitchell's requests, that the cable needed to be buried. Torrence failed to act either upon the requirements of the National Electric Safety Code or upon Mitchell's repeated requests.
We conclude that a jury could find from the evidence in the record that Torrence acted with reckless indifference by failing to perform its duty to hang or bury the cable, and that the reckless indifference was the proximate cause of Mitchell's injury. Therefore, the summary judgment is reversed insofar as it relates to Mitchell's wantonness claim.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
Robertson, P.J., and Yates, Monroe, and Crawley, JJ., concur.
[1] The record indicates that Torrence acquired Gulf Rural America Cable Company sometime in 1996.
[2] The record does not indicate Breithaupt's position or title with Torrence, but from the context of the excerpts from his deposition testimony we presume he is an officer of Torrence.